288 F.2d 442
 UNITED STATES of America, Respondent-Appellee,
v.
William BENTVENA, Carlie Di Pietro, Joseph Fernandez,
Carmine Galante, Angelo Loicano, Frank Mari,
Samuel Monastersky, John Ormento,
William Struzzieri,
Petitioners-Appellants.
 No. 26869.
 United States Court of Appeals Second Circuit.
 Argued Feb. 7, 1961.
Decided Feb. 7, 1961.
 
 James K. Branigan, New York City, for petitioners-appellants William Bentvena and William Struzzieri.
 William Kleinman, Brooklyn, for petitioners-appellants Carlie Di Pietro and Frank Mari.
 Thomas A. Wadden, Jr., Washington, D.C., for petitioner-appellant Carmine Galante.
 George J. Todaro, New York City, for petitioner-appellant Joseph Fernandez.
 Sylvester Cosentino, New York City, for petitioner-appellant Angelo Loicano.
 Robert Mitchell, New York City, for petitioner-appellant Samuel Monastersky.
 Vincent J. Fuller, Washington, D.C., for petitioner-appellant John Ormento.
 Paul J. Curran, Asst. U.S. Atty., Southern Dist. of New York, New York City (Morton S. Robson, U.S. Atty., William M. Tendy and Jonathan L. Rosner, Asst. U.S. Attys., New York City, on the brief), for respondent-appellee.
 Before LUMBARD, Chief Judge, WATERMAN, Circuit Judge, and MADDEN, Judge, United States Court of Claims.*
 LUMBARD, Chief Judge.
 
 
 1
 William Bentvena and his eight co-appellants are among 19 defendants now on trial in the Southern District of New York on charges of civolating the narcotics laws, 21 U.S.C.A. 173 and 174, and conspiracy so to do, 18 U.S.C. 371. The nine defendants whose petitions we here consider had been enlarged on bail until Judge Levet remanded them to custody on January 30, 1961.[1] They then moved before this court seeking reversal of the order of commitment and applied to us for bail. On February 8, in open court, we denied the motions and affirmed the order of the trial judge.
 
 
 2
 As the appeal and the motions raised important questions regarding the powers of the trial judge to conduct a criminal trial, we think it appropriate to set forth our reasons.
 
 
 3
 We understand the appellants to argue that the right to bail is absolute to the time of conviction and that the trial judge has no discretion to remand.
 
 
 4
 The right to bail has been recognized throughout the history of the republic. Justification for the right, felt to inhere in the presumption that all men are innocent until proven guilty, has traditionally been found in the desire to ensure against the infliction of punishment prior to conviction and to permit the unhampered preparation of a defense. See Stack v. Boyle, 1951,342 U.S. 1, 4, 8, 72 S.Ct. 1, 96 L.Ed. 3; Hudson v. Parker, 1895, 156 U.S. 277, 285, 15 S.Ct. 450, 39 L.Ed. 424. Thus, until trial commences, enlargement on bail is the rule, upon adequate assurance that the accused will appear at trial.
 
 
 5
 But once the trial begins the right to bail is necessarily circumscribed by oother pressing considerations. The public interest in efficient criminal prosecution becomes more pressing once a defendant goes to trial. The investment of public funds in a trial, the impanelling of a jury, and the gathering of witnesses demand that precautions be taken to ensure that the proceedings go forward and terminate with all possible dispatch consistent with due process. A defendant at large may more easily engage in subterfuges designed to delay the trial and ultimately force a mistrial, or may tamper with witnesses to undermine the proceedings releasing a defendant on bail during the releasing a defendant on bail during the course of a trial are substantially greater than those existing before trial. For these reasons, trial courts have often exercised the power to remand a defendant into custody during the trial in the exercise of sound discretion. See United States v. Rice, C.C.S.D.N.Y.1911, 192 F. 720; Adkins v. Commonwealth, 1896, 98 Ky. 539, 33 S.W. 9488 32 L.R.A. 108; People v. Merhige, 1922, 219 Mich. 95, 188 N.W. 454; State v. Hyde, 1911, 234 Mo. 200, 136 S.W. 316; State v. Wright, 1927, 140 S.C. 363, 138 S.E. 828. We think it plain beyond discussion that neither the Fifth nor Eighth Amendment forbids this power to a federal court.
 
 
 6
 Rule 46(a)(1), Federal Rules of Criminal Procedure, 28 U.S.C.A., reads (so far as is here pertinent):
 
 
 7
 'Before Conviction. A person arrested for an offense not punishable by death shall be admitted to bail. * * *'
 
 
 8
 This portion of the rule was intended as mere restatement without change in meaning from the corresponding provision in former 596 of Title 188 Rev. Stat. 1015:
 
 
 9
 'Bail shall be admitted upon all arrests in criminal cases where the offense is not punishable by death.'
 
 
 10
 See Notes of Advisory Committee on Rule 46(a)(1); 80th Congress, House Report No. 304; Stack v. Boyle, 1951, 342 U.S. 1, 168 72 S.Ct. 1, 96 L.Ed. 3. That statute, among others, was characterized by the Supreme Court in Husdon v. Parker, 1895, 156 U.S. 277, at page 285, 15 S.Ct. 450, at page 453, 39 L.Ed. 424 as relating to 'bail upon arrest and before trial.'The Supreme Court declared, in Stack v. Boyle, supra, 342 U.S. at page 4, 72 S.Ct. S.Ct. at page 3, with reference to Rule 46(a)(1):
 
 
 11
 'Unless this right to bail before trial is preserved, the presumption of innocence, secured only after centuries of struggle, would lose its meaning.'
 
 
 12
 We agree with the United States Attorney that the topical distinction made in Rule 46(a) between the right to bail before conviction and the right to bail upon review has not destroyed the distinction between bail prior to trial and bail during the trial. Even Blackstone, at a time when bail during trial was unknown, refers customarily to 'bail before conviction,' when meaning only bail before trial. 4 Bl.Comm. 295.
 
 
 13
 We therefore hold that the district court possessed an inherent authority to remand the defendants into custody during trial in the exercise of a sound discretion. Hood v. United States, 8 Cir., 1927, 23 F.2d 472, 475; United States v. Rice, C.C.S.D.N.Y.1911, 192 F. 720; see also 51 Mich.L.Rev. 389, 396 (1953).[2]
 
 
 14
 Usually, however, many considerations supporting the right to bail before the trial continue to exist during the trial as well. Particularly when, as here, the trial is lengthy and the defendants numerous, the power of the trial judge should be exercised with circumspection, for a defendant should not be unduly hindered in his defense. Moreover, the trial judge should not overlook his power, in proper circumstances, to require additional bail in lieu of remand. See 18 U.S.C. 3143.
 
 
 15
 We also hold that under all the circumstances of the case, especially a succession of misadventures which have already caused numerous delays and adjournments in the presentation of the evidence, the order of the trial judge was a proper exercise of discretion for the purpose of ensuring the orderly completion of the trial.
 
 
 16
 From its inception the trial has been bedeviled by frequent delays. Commenced on November 21 rather than November 14 because of the disappearance of a defendant (Angelo Tuminaro) still a fugitive, it was thereafter impeded by apparent illness, accident and other misfortune.
 
 
 17
 John Ormento became ill Tuesday, December 6. The trial halted at 2:30 in the afternoon and did not resume until Friday, December 9. On Wednesday, December 14, David Petillo found himself unwell and was thereupon transferred to Bellevue where a preliminary diagnosis of cardiac insufficiency was made. After hearing conflicting medical testimony, the trial judge granted a further adjournment. Tests subsequently established that Petillo was not suffering from heart disease.
 
 
 18
 The trial was then scheduled to resume Thursday, December 22. On that day, after a motion for mistrial (grounded on prejudice to all the defendants by the prior delays) had been denied, it was found impossible to continue because one of the defendants (Sancinella) was not present. The defaulter appeared that evening and was remanded. On tuesday, December 27, the court was informed that counsel for Sancinella was suffering from an incapacitating illness. Sancinella was thereupon directed to retain new counsel, or accept court-appointed counsel, and to familiarize said counsel with the facts of the case. Because of this and the death of a juror's brother, the trial was then adjourned to January 3, 1961. On January 3, Sancinella indicated an inability to procure other counsel; the court therefore assigned him Albert Krieger, Esq., counsel for the defendant Gellman. Sancinella refused, however, to accept or confer with any counsel other than the still incapacitated attorney who had represented him at the ouset. In consequence, the trial judge granted Sancinella a mistrial and severance.
 
 
 19
 Reports that William Bentvena was ill forced suspension of proceedings on Friday, January 13.
 
 
 20
 On Wednesday, January 25, the court was informed that the defendant, Struzzieri, had been injured in an automobile accident which had occurred at about 3:30 A.M. that morning. Investigation by the government revealed that the car with which Struzzieri had collided was driven by one Franzione, a man possessed of an extensive criminal record and despite his denials, apparently well acquainted with Struzzieri. On January 27, the physician in charge of Struzzieri at Queens General Hospital informed the court that Struzzieri could be discharged from the hospital the following day. Disagreement as to the possibility that Struzzieri might be suffering from a subdural hematoma, resulted in extended hearings at which medical testimony was presented by a court-appointed neurosurgeon, a resident at the hospital, and a neurologist retained by Struzzieri. The defendant's neurologist testified that Struzzieri's condition demanded a diagnosis of 'subdural suspect'; he urged a spinal tap to clarify the matter. The court-appointed physician thereupon reexamined the patient and reported that he was convinced beyond a reasonable doubt that Struzzieri did not have a subdural hematoma, was malingering, and was able to stand trial. Struzzieri subsequently refused to permit a spinal tap.
 
 
 21
 To the date of remand there had been precisely 25 trial days; 6 in November, 6 1/2 in December, 12 1/2 in January. The government had not yet finished putting in its case.
 
 
 22
 At the trial's commencement on November 21, the court selected four alternate jurors. By January 30 two jurors had been excused leaving only two alternates for further emergencies, little enough insurance for a long trial in the middle of a severe winter.
 
 
 23
 Before remanding appellants, the trial judge, out of the presence of the jury, considered the substantial facts in the development of the case and concluded:
 
 
 24
 'I am unable to discriminate between the defendants. I realize that counsel may be to some extent inconvenienced. However, in order to assure the presence of the defendants at the trial I am, I believe, after balancing the situation, constrained to * * * direct the remand of all defendants now on bail.' Record 5822-23.
 
 
 25
 The court then undertook to make arrangements so that counsel might suitably confer with their clients.
 
 
 26
 The appellants' further contention that the court should have considered the conduct of each of the defendants individually before directing any particular defendant's remand is here without merit.
 
 
 27
 Plainly the trial judge found it impossible to distinguish among the defendants. The trial of all defendants had reached the point where any further delays affected the rights of all concerned. Two alternate jurors only remained; this depletion of the jury threatened that the proceedings might end in a mistrial as the government had not finished it case and of course any defendant could refuse his consent to proceed with less than 12 jurors. The danger that the trial might be disrupted and never concluded affected all the defendants equally. In the circumstances of the case the trial judge may well have detected a general pattern of conduct not attributable to less than all of the defendants. Nor can we, reviewing a bare record, hope to accomplish what the trial judge, with first hand knowledge of the defendants and of the evidence against them, was unable to do.
 
 
 28
 If, under the present circumstances, a judge were powerless to ensure the continued prompt attendance of those without whose presence the trial court not proceed, defendants could make a mockery of trial by jury and render it impossible for a trial to reach a verdict and for justice to be done.[3]
 
 
 29
 The motions are denied; the orders of the district court are affirmed.
 
 
 
 *
 Sitting by designation
 
 
 [1]
 The bail posted by petitioners had been: Bentvena $7,500; Carlie Di Pietro $50,000; Joseph Fernandez $20,000; Carmine Galante $100,000; Angelo Loicano $10,000; Frank Mari $7,500; Samuel Monastersky $7,500; John Ormento $7,500 in addition to $100,000 posted in United States v. Aviles; William Struzzieri $7,500. All of the appellants have records showing frequent arrests. Six have been convicted of violations of the narcotics laws, state or federal; Carmine Galante and John Ormento were fugitives from justice at the time fifteen of their co-defendants in United States v. Aviles, 2 Cir., 1960, 274 F.2d 179. were tried and convicted
 
 
 [2]
 We are not dealing here with the power of the trial judge to punish for contempt by remand for the duration of the trial. See United States v. Hall, 2 Cir., 1949, 176 F.2d 163, certiorari denied 338 U.S. 851, 70 S.Ct. 90, 94 L.Ed. 521
 
 
 [3]
 It is unnecessary to consider the petitioners' contention that they were entitled to a hearing at which they might challenge the government's grave allegations concerning attempts to intimidate two of the witnesses. Cf. Stack v. Boyle, 1951, 342 U.S. 1, 6, 72 S.Ct. 1, 96 L.Ed. 3, as we find ample support in the record to justify the remand apart from such allegations