**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**A. D. ALLISON, Defendant-Appellant.**

**No. 23711.**

United States Court of Appeals
Ninth Circuit.

June 17, 1969.

---

* Judge Freedman heard the argument in this case but did not participate in the ultimate decision.

James F. Hewitt (argued), Legal Aid Society, San Francisco, Cal., for appellant.

John G. Milano, Asst. U. S. Atty., (argued) Cecil F. Poole, U. S. Atty., Jerrold M. Ladar, Asst. U. S. Atty., Crim. Div., San Francisco, Cal., for appellee.

Before BROWNING and CARTER, Circuit Judges, and GRAY, District Judge.*

BROWNING, Circuit Judge:

Defendant appeals from his conviction of armed bank robbery in violation of 18 U.S.C. § 2113(a) (d) (1964). We affirm.

On March 28, 1968, two men entered a San Francisco branch of the American Savings and Loan Association, held several employees at gunpoint, and escaped with bank funds. Several days later, defendant was identified as one of the bandits from a spread of photographs shown to employees of the bank by agents of the Federal Bureau of Investigation. Defendant learned that he was being sought and surrendered to authorities.

At trial, two of the bank's employees identified defendant as a participant in the robbery. In addition, one William Langley testified that defendant solicited his assistance in robbing the bank, but that he refused and left San Francisco before the date of the robbery. Mrs. Langley also testified, corroborating her husband.

The defense was mistaken identity and alibi. Defendant's sister testified that defendant was with her at the time of the robbery, and nearly continuously from 9:00 or 10:00 in the morning until midnight on that day. Defendant testified to the same effect. He also testified that on several occasions Mr. and Mrs. Langley sought to involve him in various criminal endeavors, including robbery of a bank which they did not identify. According to defendant, he resisted these advances, on one occasion throwing Langley out of his apartment, and the Langleys told him, "We'll make you suffer for this." He further testified that he had been mistaken for Langley on several occasions and that two days before the robbery he saw Langley

on the street not far from the bank which was robbed.

Defendant was convicted and senenced to fifteen years' imprisonment. We turn to his specifications of error.

### I

After the jury was sworn, defendant's counsel made an oral motion in chambers to suppress the identification testimony of the bank employees. The ground advanced was that the pretrial display of photographs to these witnesses "to our way of thinking would be a lineup in violation of the requirements of the Wade and Gilbert cases,[1] and therefore any identification [the witnesses] * * * make in court would be tainted thereby and should be inadmissible." In addition, counsel cited Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968), as a case "in which certain standards are laid down for the out-of-court identification by photographs." Counsel concluded that "if the identification does violate those cases," its fruit was inadmissible.

The trial court denied the motion, remarking that "[t]he fact that these witnesses may or may not have identified the defendant from photographs * * * is wholly immaterial, except for purposes of cross-examination at the election of the defense."

As defendant points out, the view expressed by the trial court is no longer the law, for the Supreme Court has held that pretrial photographic identification procedures may so taint in-court identification testimony as to render such testimony inadmissible on due process grounds. This is the clear thrust of the statement in Simmons v. United States, *supra,* "that convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identifi-

---

* Honorable William P. Gray, United States District Court for the Central District of California, sitting by designation.

1. United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967); Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967).

cation procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." [2] The Court restated the rule in Foster v. California, 394 U.S. 440 n.2, 89 S.Ct. 1127, 22 L.Ed.2d 402 (1969):

> "The reliability of properly admitted eyewitness identification, like the credibility of the other parts of the prosecution's case is a matter for the jury. But it is the teaching of *Wade, Gilbert, and Stovall,*[3] *supra,* that in some cases the procedures leading to an eyewitness identification may be so defective as to make the identification constitutionally inadmissible as a matter of law."[4]

Defendant does not contend, however, that the record establishes that the in-court identifications were inadmissible under due process principles. He argues, rather that the district court erroneously refused to permit inquiry into the subject, thus depriving defendant of a determination of the issue of admissibility by the judge out of the presence of the jury.

■ We agree that where a timely and sufficient motion is made to suppress identification testimony on the ground that it has been tainted by pretrial photographic identification procedures, it must be heard and determined by the court outside the jury's presence in the same manner as any other motion to suppress evidence alleged to be inadmissible because unlawfully obtained.

■ Here, however, the motion was plainly insufficient to require inquiry into the due process issue.[5] An evidentiary hearing on this issue was required only if the supporting allegations were "sufficiently definite, specific, detailed, and nonconjectural, to enable the court to conclude that a substantial claim [was] * * * presented." Cohen v. United States, 378 F.2d 751, 761 (9th Cir. 1967).[6]

We have quoted defense counsel's oral motion virtually in its entirety. Counsel did not allege, in detail or at all, that the photographic identification procedures employed in this case were so suggestive as to give rise to a substantial likelihood of irreparable misidentification. Except for the possible inference from his passing reference to *Simmons,* this was not the ground of his motion. He contended, rather, that the pretrial photographic identification interviews with the bank employees were equivalent to a lineup, and hence required the presence of counsel—a contention not made on appeal.[7] If counsel did intend to raise the due process issue, his motion fell far short of *Cohen's* standards.

It would be improper to apply the *Cohen* requirements strictly to a defendant who did not know the procedures followed by the government in exhibiting photographs to potential identification witnesses, and no doubt many de-

---

2. 390 U.S. at 384, 88 S.Ct. at 971. The formula is derived from Stovall v. Denno, 388 U.S. 293, 301–302, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967), defining due process limitations on lineups and showups, an issue which the *Simmons* court recognized to be similar to the problem before it.

3. Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967).

4. *See also* Hill v. United States, 401 F.2d 995 (9th Cir. 1968) (by implication).

5. Since the jury had already been impaneled and sworn, the motion was also untimely. *See* Nardone v. United States, 308 U.S. 338, 341–342, 60 S.Ct. 266, 84 L.Ed. 307 (1939).

6. *See* Nardone v. United States, 308 U.S. 338, 341–342, 60 S.Ct. 266, 84 L.Ed. 307 (1939); United States v. One 1965 Buick, 392 F.2d 672, 678 (6th Cir. 1968); United States v. Phillips, 375 F.2d 75, 78–79 & n. 2 (7th Cir. 1967). *See also* Anderson v. United States, 406 F.2d 770 (9th Cir. 1969).

7. It is therefore unnecessary to consider whether the motion was sufficient to raise a substantial claim on this theory.

fendants would fall in this category. Here, however, defense counsel did not dispute the Assistant United States Attorney's representation that he had, in the course of pretrial discovery, furnished defense counsel with "all of the particulars pertaining to the photo identifications which were made by the bank witnesses * * *." Thus the inadequacy of defendant's motion is not attributable to lack of information, and the inference is strong that the motion was not more specific and the *Simmons* issue was not explicitly advanced because counsel was satisfied that the procedures employed were not in fact impermissibly suggestive.

## II

Defendant urges reversal on the ground that the trial court's ruling that defendant's prior felony convictions were admissible for impeachment failed to conform with the standards first set forth in Luck v. United States, 121 U.S. App.D.C., 151, 348 F.2d 763 (1965).[8]

As we read the record the trial court acted on the assumption that it had discretion to exclude evidence of defendant's prior convictions.[9] Although not often the subject of explicit comment, such discretion clearly exists as a facet of the trial court's broad power to exclude or limit the use of evidence which is "particularly prejudicial * * * even though admissible under an accepted rule of evidence." Spencer v. Texas, 385 U.S. 554, 561, 87 S.Ct. 648, 17 L.Ed.2d 606 (1967). See also United States v. Palumbo, 401 F.2d 270, 273 (2d Cir.1968). The exercise of this discretion necessarily requires a "balancing of intangibles—probative values against probative dangers * * *." C. McCormick, Evidence § 152, at 320 (1954).[10]

While our decisions[11] make clear that convictions offered to impeach are

---

**8.** Under *Luck*, exclusion of such evidence is appropriate where the trial court determines that the prejudicial effect of a prior conviction far outweighs its probative value or that the cause of truth would be helped more by letting the jury hear defendant's story than by defendant's foregoing the opportunity to testify because of fear of prejudice from proof of the prior conviction. 348 F.2d at 768; *see* Brown v. United States, 125 U.S. App.D.C. 220, 370 F.2d 242, 245 (1966).

Cases decided under *Luck* in the District of Columbia Circuit are collected in an appendix to Weaver v. United States, 408 F.2d 1269 (D.C.Cir. 1969). Two other circuits have adopted the rule. United States v. Palumbo, 401 F.2d 270, 273 (2d Cir. 1968); United States v. Hildreth, 387 F.2d 328, 329 (4th Cir. 1967). *See also* Burg v. United States, 406 F.2d 235, 238 (9th Cir. 1969) (Ely, J., concurring); United States v. Sternback, 402 F.2d 353, 356 (7th Cir. 1968) (Fairchild, J., speaking individually). It has the general approval of the commentators. *E. g.*, Spector, Impeachment Through Past Convictions: A Time for Reform, 18 De Paul L.Rev. 1 (1968); Note, The United States Court of Appeals for the District of Columbia Circuit: 1966–1967 Term, 56 Geo.L.J. 58, 117 (1967). *See also* C. McCormick, Evidence § 43, at 94 (1964); Note, Other Crimes Evidence at Trial: Of

Balancing and Other Matters, 70 Yale L.J. 763 (1961).

There is authority to the contrary, however. *See, e. g.*, Proposed Rule of Evidence for the United States District Courts and Magistrates 6–09, and Advisory Committee's Note, *id.* at 126–27 (Preliminary Draft 1969). Among recent cases, see Montgomery v. United States, 403 F.2d 605, 611 (8th Cir. 1968); Craft v. United States, 403 F.2d 360, 366 (9th Cir. 1968); Henderson v. United States, 402 F.2d 755 (5th Cir. 1968).

**9.** Thus the court indicated that it would not allow impeachment by use of a prior conviction that was "so historically distant that there is a basic lack of fairness in using it." This view conforms with decisions of this and other courts. *See* note 12 *infra*.

**10.** This is implicit in the Supreme Court's discussion in Spencer v. Texas, 385 U.S. at 560–561, 87 S.Ct. at 652.

**11.** *E. g.*, Burg v. United States, 406 F.2d 235 (9th Cir. 1969); Craft v. United States, 403 F.2d 360, 366 (9th Cir. 1968); Singleton v. United States, 381 F.2d 1, 4 (9th Cir. 1967); Helberg v. United States, 365 F.2d 314, 316 (9th Cir. 1966); Bush v. United States, 267 F.2d 483, 489 (9th Cir. 1959); Medina v. United States, 254 F.2d 228 (9th Cir. 1958).

"admissible under an accepted rule of evidence," they do not hold that such evidence must always be admitted. To the contrary, we have recognized that proof of prior convictions for impeachment should be excluded if the trial judge, in the exercise of his discretion, concludes that it lacks sufficient probative value because of the remoteness in time of the convictions.[12]

■ In exercising its discretion in the present case, the trial court appears to have given exclusive consideration to the historical remoteness of the convictions. In balancing the probative value of the evidence against its prejudicial effect, many other factors may also be relevant;[13] and, under *Luck* an exercise of discretion in disregard of the full range of relevant criteria would, if prejudicial, require reversal. See Brown v. United States, 125 U.S.App.D.C. 220, 370 F.2d 242, 245 (1966).

■ Whether a panel of this court could properly reverse for failure to consider the full range of relevant criteria has been questioned.[14] Assuming that it could, however, reversal would be warranted only if there had been a "meaningful invocation" of the trial court's discretion in terms of those criteria. Hood v. United States, 125 U.S. App.D.C. 16, 365 F.2d 949, 951 (D.C. Cir.1966).[15] In this case, counsel did no more than cite *Luck* and request total exclusion of any reference to defendant's criminal record in the event he took the stand. This was not enough. Hood v. United States, *supra*.

## III

Defendant contends that reversal is required because the trial court revoked bail and remanded him to custody during trial. The relevant facts are as follows.

For several months before trial, defendant had been at liberty on a monetary bond. There is no suggestion that he failed to make any required appearances or otherwise violated the conditions of his release.

When the government rested on the first day of trial, the jury was excused for the day to permit the defense to present a motion for judgment or acquittal. After the motion had been made and denied, the trial court, sua sponte, set aside the order fixing bail and remanded defendant into custody for the duration of the trial.

Defendant's counsel voiced no objection to the court's action, but merely requested, and obtained, permission for defendant to speak with his wife. On the following day, however, counsel moved the court to declare a mistrial on the grounds that his client had been prejudiced in the eyes of the jury and that the commitment "put some hamper on his conferences with me." In denying the motion, the court explained that its order had been prompted by two considerations: defendant's "rather exten-

---

12. Singleton v. United States, 381 F.2d 1, 4 (9th Cir. 1967). *See, e. g.,* Henderson v. United States, 402 F.2d 755 (5th Cir. 1968); Mason v. Mathiasen Tanker Indus., 298 F.2d 28, 31 (4th Cir. 1962); Goddard v. United States, 131 F.2d 220 221 (5th Cir. 1942). "[M]ost courts hold * * * that a conviction too remote in time may be excluded by the judge if in his discretion he finds that under the circumstances it lacks probative value." C. McCormick, Evidence, § 43, at 91 (1954), quoted with approval in United States v. Palumbo, 401 F.2d 270, 273 (2d Cir. 1968).

13. *See generally* Gordon v. United States, 127 U.S.App.D.C. 343, 383 F.2d 936 (1967).

14. Burg v. United States, 406 F.2d 235, 237–238 (9th Cir. 1969) (Hamley, J., concurring).

15. *See also* Lewis v. United States, 127 U.S.App.D.C. 115, 381 F.2d 894 (1967); Harley v. United States, 126 U.S.App. D.C. 287, 377 F.2d 172, 173 (1967); Stevens v. United States, 125 U.S.App. D.C. 239, 370 F.2d 485 (1966); Walker v. United States, 124 U.S.App.D.C. 194, 363 F.2d 681 (D.C. Cir. 1966); Smith v. United States, 123 U.S.App.D.C. 259, 359 F.2d 243, 244–245 (D.C. Cir. 1966).

sive" criminal record; and the strength of the government's case-in-chief.[16]

We are inclined to agree with the defendant that the order was erroneously entered, but not that the error warrants reversal.

 As the Supreme Court recently stated, "A trial judge indisputably has broad powers to ensure the orderly and expeditious progress of a trial. For this purpose, he has the power to revoke bail and to remit the defendant to custody." Bitter v. United States, 389 U.S. 15, 16, 88 S.Ct. 6, 19 L.Ed.2d 15 (1967).[17] The Court continued, "But this power must be exercised with circumspection. It may be invoked only when and to the extent justified by danger which the defendant's conduct presents or by danger of significant in-terference with the progress or order of the trial." Id.[18] Thus the interests protected by a remand to custody must be accommodated with the defendant's right to be free on bail until convicted —a right so vital that orders revoking bail are immediately reviewable though obviously not dispositive of the merits of the case. Carbo v. United States, 288 F.2d 282, 283 (9th Cir. 1961); see Stack v. Boyle, 342 U.S. 1, 6, 72 S.Ct. 1, 96 L.Ed. 3 (1951).[19]

 Were this a direct appeal from the district court's action, we would have difficulty upholding it. As noted, the remand order was based entirely upon the danger of flight, which, in turn, was based upon defendant's prior criminal record and the strength of the government's case-in-chief.[20]

---

16. On the latter point, the court said:
 "I think that there is a substantial difference between the status of the defendant as of the close of the Government's case and as of the time that bail was fixed. I think that the probabilities of flight increased greatly upon the disclosure by the Government of the extent to which incriminating evidence was available and was in fact produced. None of these were factors which were considered or susceptible of consideration at the time of the original fixing of bail."

17. Accord, Fernandez v. United States, 81 S.Ct. 642, 644, 5 L.Ed.2d 683 (1961) (Harlan, Circuit Justice); United States v. DiPietro, 302 F.2d 612 (2d Cir. 1962); Carbo v. United States, 288 F.2d 686, 688 & n.6 (9th Cir. 1961); United States v. Bentvena, 288 F.2d 442, 444-445 (2d Cir. 1961); Carbo v. United States, 288 F.2d 282, 285 (9th Cir. 1961). See also Note, Bail in the United States, 20 Hastings L.J. 380, 383 (1968).

18. See also United States v. DiPietro, 302 F.2d 612, 614 (2d Cir. 1962); United States v. Bentvena, 288 F.2d 442, 445 (2d Cir. 1961). Remand may not "be ordered on an undiscriminating wholesale basis." Fernandez v. United States, 81 S.Ct. 642, 644, 5 L.Ed.2d 683 (1961) (Harlan, Circuit Justice).

19. As Judge Hamley stated in *Carbo:*
 "When a criminal trial is in actual progress there must be an accommoda-tion between the right of a defendant to be free on bail and the inherent power of the court to provide for the orderly progress of the trial. Where release on bail poses no substantial threat to the orderly progress of the trial, the imperatives of the Constitution and the rule require that the right to preconviction bail be honored. Indeed, freedom from custody, cherished at any time, has special importance to an individual while he is defending himself in a criminal prosecution * * *.
 If, however, there is reason to believe that a trial actually in progress may be disrupted or impeded by the flight of the defendant, or by his activities in or out of the courtroom during the trial, the fair administration of justice is itself jeopardized. In that event the court may give precedence to its inherent power and revoke bail if necessary for the duration of the trial." 288 F.2d at 285 (citations omitted).

20. Because the order is an exercise of discretion, our review is limited to the reasons advanced by the trial judge, Carbo v. United States, *supra*, at 286, though we must also take account of the fact that we "cannot possibly have the same full 'feel' of the atmosphere" of the trial as the district judge. Fernandez v. United States, 81 S.Ct. 642, 645, 5 L.Ed.2d 683 (1961) (Harlan, Circuit Justice); United States v. DiPietro, 302 F.2d 612, 614 (2d Cir. 1962).

As this court indicated in *Carbo,* a defendant's criminal record, of itself, is of little relevance in assessing the likelihood of flight where, as here, the prior offenses do not reflect a propensity to abscond. 288 F.2d at 287.

Nor do we think that in the circumstances of this case the strength of the government's case-in-chief afforded a substantial basis for the court's order. The government's evidence was not unexpectedly strong. One of the two eyewitnesses was quite uncertain about her identification of defendant, and the Langleys were discredited by revelations of their dubious pasts. As we have noted, the defense had been apprised before trial of "all of the particulars" of the eyewitness identifications, and also knew that the Langleys would be witnesses. Despite this knowledge, there is no evidence defendant considered flight.

It is also significant that, after conviction, when the probability of flight was presumably at its maximum, the trial court set bail pending appeal, though in an amount greater than that upon which defendant had been released before trial. There is nothing to indicate why this less drastic action would not have sufficed during trial. See United States v. Bentvena, 288 F.2d 442, 445 (2d Cir. 1961).

We are not persuaded, however, that the remand order, though error prejudiced defendant or denied him a fair trial.

Defendant argues that the fact that he was taken into custody after the first day of trial created an impression in the jury's mind that defendant had "done something wrong" or that the judge had already found him guilty. But defendant's supposition of prejudice has no support in the record. As the government points out, there is nothing to indicate that the jury was aware that defendant was at liberty at any time after trial commenced.

Defendant also argues that the order of commitment interfered with his ability to prepare his defense. He asserts that he did not know what the Langleys' testimony would be and that remand to custody effectively precluded him from obtaining rebuttal evidence. The testimony of the Langleys concerned statements which defendant himself allegedly made and events in which he and his wife participated. The defendant and his wife testified to their version of these matters. Defendant has not suggested, and we have been unable to imagine, what additional evidence might have been available to refute the Langley's testimony.

Nor has defendant indicated how his opportunity to confer with his counsel was limited. The trial court stated that "the Marshal has been advised or instructed to exercise maximum discretion insofar as the custodial aspect is concerned," and told defense counsel that facilities were available for private conferences with his client. There is nothing in the record to suggest that these instructions were not fully complied with.

Because of the obvious potential for prejudice inherent in an order for commitment during trial we have considered defendant's allegations with great care. We decline to reverse only because we are satisfied that no prejudice occurred.

We are aware that the Supreme Court reversed the conviction in Bitter v. United States, *supra,* without inquiring whether prejudice flowed from the improper commitment order, holding that the order itself "constituted an unwarranted burden upon defendant and his counsel in the conduct of the case." 389 U.S. at 17, 88 S.Ct. at 7.[21] However, a close reading of the opinion demonstrates that the Court viewed the com-

21. Petitioner was incarcerated about 40 miles from the courtroom, but the Supreme Court gave this no special weight. The Court of Appeals in *Bitter* had assumed that the trial judge's action was unreasonable, but concluded after careful consideration that there was no prejudice. 374 F.2d 744, 749 (7th Cir. 1967). The Supreme Court did not reject this conclusion.

mitment order in that case as in substance an order imposing sanctions for contempt without compliance with procedural requirements.[22] We think it reasonably clear that the Court did not intend to abrogate the harmless error rule where, as here, the commitment order was designed albeit unjustifiably, to facilitate the conduct of the trial.

Affirmed.

---

22. The Court said:
 "The record in this case shows only a single, brief incident of tardiness [by the defendant], resulting in commitment of the defendant to custody for the balance of the trial in a jail 40 miles distant from the courtroom. In these circumstances, the trial judge's order of commitment, made without hearing or statement of reasons, *had the appearance and effect of punishment rather than of an order designed solely to facilitate the trial. Punishment may not be so inflicted.* Cf. Rule 42 of Fed. Rules Crim.Proc. (governing the contempt power)." 389 U.S. at 17, 88 S. Ct. at 7 (emphasis added).
 It may also be relevant that, unlike defendant, Bitter was sentenced before enactment of the Bail Reform Act of 1966, which provides credit against a sentence for all time spent in custody in connection with the offense for which sentence was imposed. 18 U.S.C. § 3568, *discussed in* Stapf v. United States, 125 U.S.App.D.C. 100, 367 F.2d 326, 329 (1966).