STATE OF NEBRASKA, APPELLEE, V. I. V. STARKS, APPELLANT.

253 N. W. 2d 166

Filed May 4, 1977. No. 40876.

Frank B. Morrison and Stanley A. Krieger, for appellant.

Paul L. Douglas, Attorney General, and Robert F. Bartle, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, BRODKEY, and WHITE, JJ., and KUNS, Retired District Judge.

BOSLAUGH, J.

The defendant was found guilty of shooting at John R. Farmer with intent to kill, wound, or maim and unlawful possession of a firearm by a felon. He was sentenced to imprisonment for concurrent terms of 2 to 5 years and 2 to 3 years. He has appealed and contends the judgment should be reversed because the trial court failed to sustain his motion for a mistrial made at the close of the trial.

The evidence shows the shooting took place in Omaha, Nebraska at about 1:15 a.m. on February 13, 1976. Farmer, a police officer assigned to the vice and narcotics unit as an undercover investigator, was driving an unmarked Buick car and was not in uniform. Farmer stopped for a traffic light at the intersection of 30th and Binney Streets. When an

automobile operated by the defendant stopped to the west of the Buick, Farmer noticed the defendant was pointing a gun at him. Farmer fired at the defendant and then proceeded south on 30th Street with the defendant following him. Farmer radioed for assistance and fired a second shot at the defendant as they proceeded south on 30th Street. Frank J. O'Connor, a police officer assigned to the criminal investigation bureau, special events section, answered the call and proceeded to the intersection of Hamilton and 30th Streets.

After crossing the intersection at Hamilton Street, Farmer turned the Buick to the northeast and stopped across the center traffic lanes of 30th Street. The defendant pulled up close to the Buick and fired 4 or 5 shots at the car. Farmer at this time was south of the Buick using it for cover. O'Connor fired one shot from his riot gun at the defendant. The defendant passed to the right of the Buick and continued south on 30th Street. O'Connor followed the defendant and apprehended him after going 6 or 7 blocks. A pistol with one live round and five spent rounds was found under the front seat of the defendant's automobile.

After the jury had been instructed and was leaving the courtroom the trial court directed a deputy sheriff to place the defendant in custody. The defendant then moved for a mistrial which motion was overruled. The record shows the following: "MR. FRANK: Your Honor, at this time the Defendant will move for the Court to declare a mistrial on the grounds that after the instructions were read to the jury, at approximately twelve twenty P.M. this date, while the jury was still — while at least part of the jury was still in the Courtroom the Court, through Judge Tesar, very loud, boisterous manner directed the Deputy to place my client under arrest, and place him in custody pending the outcome of the decision. I will point out to the Court that my client

has been out on bond pending the disposition of this case, and has been on bond during the trial of this case, and that the Court's comments in front of, at least, a partial members of the jury panel was tantamount to the Court expressing its conviction of the guilt or innocence of my client, therefore, depriving the client, I. V. Starks, of a fair and impartial trial. THE COURT: Let the record show that the jury was instructed, and were leaving the Courtroom. It is true that probably some of them might have been still in the vicinity of the Courtroom. The Defendant got up in the Courtroom, and was going to leave the Courtroom with a couple of friends that he had, and I said the Defendant will be placed in custody. That's exactly what I said because I place a Defendant in custody after a jury is instructed because I want the jury — I want the Defendant to be present. I don't want to go through, and I will not have the reputation of having tried a case and the Defendant leaving after the jury is gone, and then failing to show up when the jury arrives at a verdict. It happened to me, and I have declared a mistrial in that case, and I will not do it again. It's a rule of this Court that after the case is submitted I put them in custody to insure their presence when the jury has arrived at a verdict. As to whether any of the jurors heard my remarks I cannot say. I doubt it if they did, but I make that comment now for counsel. If he doesn't know it that he should conduct himself he knows it now. MR. FRANK: While the comment was made by the Court to place my client in custody there were at least, within my view, four jurors still standing in line in the jury box waiting to leave the Courtroom, and that there was no indication, no evidence to the Court that my client would skip pending the disposition of the jury hearing. My client stood up, probably because when the jury was allowed to leave he assumed that the Court was in recess. At that point he had not left the Courtroom, but he just

started to stand. There were friends and some relatives, and witnesses in the Courtroom at the time. There is no indication to the Court he would leave. It's been my experience in the Court, through most of the Douglas County and District Courts, when one is out on bond pending the disposition of a trial they are usually held in custody for sentencing after a jury verdict not after the instructions. I still feel it was prejudicial to my client. THE COURT: The motion will be overruled.''

We find no prejudicial error. The motion was supported only by the statement of counsel and there was no showing that any juror understood the statement of the trial court as a comment on the guilt of the defendant. The record does not show the defendant was deprived of a fair and impartial trial by any improper remarks of the trial court made in the presence of the jury.

It is generally held that it is within the sound discretion of the trial court to remand a defendant to custody during trial because the dangers of releasing a defendant on bail during the course of a trial are substantially greater than those existing before trial. United States v. Bentvena, 288 F. 2d 442. After the trial has commenced the defendant does not have the same right to bail that existed before the trial began. The provision in section 29-901, R. R. S. 1943, that a recognizance shall be continuous "until final judgment" relates to the obligation of the surety and does not mean that all defendants shall be free on bail until final judgment.

A trial court has broad powers to insure the orderly and expeditious process of a trial, and this includes the power to revoke bail and remit the defendant to custody. Bitter v. United States, 389 U. S. 15, 88 S. Ct. 6, 19 L. Ed. 2d 15. However, the power should be exercised only when it is necessary to avoid interference with the progress or order of the trial.

In this instance the trial court thought it was necessary to place the defendant in custody to insure that he would be present when the jury had finished its deliberations. The record does not affirmatively show an abuse of discretion.

Here there was no showing of prejudice. In the absence of prejudice, an erroneous revocation of bail does not affect the merits of the case. United States v. Allison, 414 F. 2d 407.

Upon a consideration of the entire record we are satisfied a miscarriage of justice did not occur. The judgment of the District Court is affirmed.

AFFIRMED.