UNITED STATES of America, Plaintiff-Appellee,

v.

Martin STERNBACK, Defendant-Appellant.

No. 16259.

United States Court of Appeals Seventh Circuit.

Oct. 14, 1968.

Rehearing Denied Nov. 14, 1968.

Certiorari Denied Feb. 24, 1969.

See 89 S.Ct. 862.

Charles A. Bellows, Jason E. Bellows, Sherman C. Magidson, Chicago, Ill., Bellows, Bellows & Magidson, Chicago, Ill., of counsel, for appellant.

Thomas A. Foran, U. S. Atty., John B. Simon, Asst. U. S. Atty., Chicago, Ill., John Peter Lulinski, Gerald M. Werksman, Asst. U. S. Attys., of counsel, for appellee.

Before HASTINGS, FAIRCHILD and CUMMINGS, Circuit Judges.

FAIRCHILD, Circuit Judge.

Dr. Martin Sternback was charged with 22 offenses against the mail fraud statute.[1] Each count alleged that Sternback caused delivery by the post office of a letter, in each case for the purpose of executing a scheme to defraud, described in detail. Count 17 was dismissed on motion by the government. Sternback was convicted on all other counts, and has appealed.

Condensed and summarized, the description of the alleged scheme to defraud was as follows:

Defendant Sternback, a physician, would examine claimants who had been involved in automobile accidents. He would cause medical reports and medical bills to be prepared, each containing false representations. He would cause these reports and bills to be furnished to the attorneys representing the claimants and to be sent by the attorneys to the insurance and other firms who were the intended victims of the scheme.

The evidence in support of each count varied in detail, but presented a similar pattern. The claimant or claimants in-

1. 18 U.S.C. sec. 1341.

volved in the particular count testified that after being in an accident he consulted an attorney and later consulted Dr. Sternback, saying in some cases that the attorney referred him to Dr. Sternback. The claimant described his complaints, the number of visits to Dr. Sternback's office, and the treatments given.

A representative of the insurance company or other company involved produced a carbon copy of a medical report and medical bill, and testified that these came from claimant's attorney and the claim was settled in reliance on them. The documents appeared to be copies of Dr. Sternback's medical report and the bill for his services.

If the testimony of claimants is correct, as the jury believed, the number of visits charged for at $10 per visit was substantially inflated in each bill and the complaints and treatment furnished were exaggerated in each report.

It was stipulated that various letters were received through the mail, as alleged. In each case the mailing occurred at some stage of the negotiations for settlement, some letters being addressed to the insurance company or its representative, some to claimant's attorney.

Defendant concedes that there was sufficient proof that the bills and reports contained false statements and that the insurance companies relied on them. He contends there was insufficient proof that he authored the fraudulent papers, that he furnished them to the attorneys, that he caused them to be sent to the insurance companies, or that he caused the mailings charged and proved. He also contends that the district court erred in a ruling on anticipated evidence and in denying disclosure of grand jury proceedings for the purpose of challenging the indictment.

Defendant's three contentions, and our dispositions of them, are as follows:

1. *Insufficiency of the evidence.*

Each of the purported medical bills is on a printed form of statement, with Dr. Sternback's name, address and phone numbers printed at the top. Each of the purported medical reports is on letterhead stationery, with Dr. Sternback's name and two addresses printed at the top. The format of the letterhead appearing in counts 19, 20, and 21 is slightly different from the stationery appearing in the other counts, but the substance is the same. Each report is typed in the form of a letter addressed to the claimant's attorney. Each bears a purported signature "Martin Sternback, M.D.", affixed by rubber stamp.

Defendant correctly asserts that there is no testimony or other direct evidence that the documents were prepared by defendant or under his supervision, that he sent or mailed them to the attorneys, or that he was told what use the attorneys would make of them. In these respects the government's case rested on inferences from circumstances.

Assuming that defendant authored the bills and reports, inflating the number of visits and the charges which resulted, and exaggerating the claimants' injuries, the only reasonable inference would be that defendant intended to provide ammunition for the attorneys in obtaining more money in settlement from those who might be responsible for the accidents.[2]

The reports were addressed to the claimants' attorneys, were sent by the attorneys to the adjusters, and there was correspondence by mail at various stages of achieving the settlements. One in defendant's position must know that such correspondence was probable and almost necessary in executing the scheme to defraud whoever was going to pay the claims. It is not necessary, in

---

2. After the district court disposed of the case he ordered the United States attorney to deliver copies of the statements of witnesses to the Committee on Inquiry of the Chicago Bar Association.

a prosecution under this statute, to show that defendant specifically authorized the various letters to be sent; "it is enough if he knows that in the execution of the scheme letters are likely to be mailed, and if in fact they are mailed." [3]

█ We think that there was sufficient proof from which to find beyond a reasonable doubt that Dr. Sternback authored the fraudulent bills and reports. The claimants saw him shortly after their accidents and told him their troubles. They testified in a number of instances that they were referred to him by their attorneys. The bills are consistent in some respects with the truth as known to Dr. Sternback, such as the dates of the first visits and the hospitalization of some of the claimants.

Count 2 involved claimant Carlsen, who testified he saw Dr. Sternback three times. The bill listed ten office visits and charged $100. Carlsen testified that on the first visit Dr. Sternback "told me that I was smart enough to keep my mouth shut * * * and * * * the visits were going to be pre-determined at $100, $10 a visit." This testimony, coupled with the other evidence as to count 2 would probably support a finding that Dr. Sternback must have been the author of the Carlsen bill, independently of the evidence with respect to other counts.

But in addition, when all the facts are considered together, it would be wholly unreasonable to believe that anyone other than Dr. Sternback, or someone under his supervision, prepared the bills and reports.

The accidents involved ranged in date from January, 1962 to April, 1964; the settlements from June, 1962 to January, 1966. The respective pairs of bills and reports were forwarded to the companies at dates ranging from April, 1962 to July 1964. Nine different law offices handled one or more claims. Thirteen different insurance companies and a bus

company received and relied on the documents. Dr. Sternback examined every claimant but no other individual or organization was involved in every one of the claims. The largest number handled by any law office was five. The proposition that someone else prepared the bills and reports without his participation is purely fanciful.

2. *Colloquy concerning use of conviction to impeach defendant.*

Defendant did not testify. His counsel suggests that he may have so chosen because a narcotics felony conviction, sustained twenty-five years earlier, would be introduced to impeach him. Counsel asserts that the district court erroneously ruled that the government would be permitted to introduce the conviction.

At a recess during the government's case, defense counsel informed the court of the conviction and asked for an expression by the court. He indicated that if the conviction were to be allowed in evidence, he "would seriously consider not putting him on the stand."

A brief informal discussion between court and both counsel followed, and several decisions of this and other courts were referred to. The court indicated that there was a question in his mind whether a conviction is admissible if very old. Defense counsel interprets one statement by the court as a definitive ruling that the conviction would be admitted notwithstanding the court's doubts. If it stood alone, the statement would so indicate. The court had, however, indicated uncertainty about the decisions on the point, had said, "We will check it out", indicated he had not read the decisions cited, and (probably because defendant cited cases from another circuit) had twice said he would rule in accordance with the decisions of this court.

The district court was being asked for a ruling in advance. We think he made it sufficiently clear that he wanted to

---

3. United States v. Cohen (2nd Cir. 1944), 145 F.2d 82, 90, cert. den. 323 U.S. 799, 65 S.Ct. 553, 89 L.Ed. 637.

read the pertinent decisions of this court before making up his mind. Although the district court did not refer to the question again, defense counsel did not pursue the matter during the remainder of the trial, nor did he include this claim among the grounds on which he moved for a new trial.

■ We think the district court could properly have excluded the conviction as too remote if in his discretion he found that under the circumstances it lacked probative value.[4] This court has said, in a case where a 20 year old conviction of rape had been admitted to impeach a defendant: "However, the rule appears to be firmly established in federal courts that the matter of the admission of such testimony is solely within the discretion of the trial judge."[5] In a later case this court declined to find error in admitting an eleven year old felony conviction to impeach defendant, but did not hold the trial court could not have excluded it.[6]

■ In the circumstances presented here, however, defendant is in no position to contend that he was prevented from testifying in his own behalf by an erroneous ruling. Perhaps a defendant should not be permitted to raise the point on appeal except where he had taken the stand and a former conviction has been used, over his objection. But at the very least, if this defendant's fear of the use of the conviction was indeed the reason why he decided not to testify, it was incumbent upon counsel to pursue the question and obtain a definitive ruling.

The problem posed by the fact that an innocent defendant may decide not to testify because of the damage a past conviction will do him is thorny.[7] Rule 21, Uniform Rules of Evidence, provides in part:

" * * * If the witness be the accused in a criminal proceeding, no evidence of his conviction of a crime shall be admissible for the sole purpose of impairing his credibility unless he has first introduced evidence admissible solely for the purpose of supporting his credibility."

The author of this opinion, speaking individually, holds the view that the proposed rule is sound policy and ought to be adopted by legislation or exercise of judicial rule making power. But injustice resulting from the existing rule would have to be much more apparent than in this case in order to justify changing the rule by decision of a particular appeal.

3. *Defect in institution of the prosecution.*

One month after the verdict, defendant filed a petition seeking disclosure of the grand jury proceedings in order to discover whether there was sufficient evidence before the grand jury. He asked relief from his failure to raise an objection before trial on the ground that he learned the relevant facts after the trial began.

What defendant learned from cross-examination of government witnesses was that none had appeared before the grand jury and the claimants had all given the government sworn statements in lieu of personal appearance before the grand jury. It also appeared there had been an investigation by a postal inspector and a private investigator employed by several insurance companies. Defendant concedes that hearsay may be a sufficient basis for an indictment.[8] He points out no reason for believing that the government did not have possession of sufficient information on which an in-

4. See McCormick, Evidence, (1954), p. 91.

5. United States v. Pinna (7th Cir. 1956), 229 F.2d 216, 219.

6. United States v. Plata (7th Cir. 1966), 361 F.2d 958, 962.

7. See McCormick, Evidence, (1954), p. 93.

8. Costello v. United States (1956), 350 U.S. 359, 363, 76 S.Ct. 406, 100 L.Ed. 397.

dictment could have been reasonably based, or that the government failed to present it or the grand jury to consider it. He suggests only the possibility that it was not properly presented or considered.

We are inclined to believe it would have been an abuse of discretion, under these circumstances, to have permitted disclosure under Rule 6(e) F.R.Cr.P., but in any event it was not an abuse of discretion to deny it.[9]

The judgment is affirmed.

9. See United States v. Bitter (7th Cir. 1967), 374 F.2d 744, 748, rev'd on other points, 389 U.S. 15, 88 S.Ct. 6, 19 L.Ed. 2d 15.