**UNITED STATES of America, Plaintiff-Appellee,**

**v.**

**Maxine WILSON et al., Defendants-Appellants.**

**Nos. 73-1308 to 73-1311.**

United States Court of Appeals, Seventh Circuit.

Argued Feb. 26, 1974.

Decided Nov. 13, 1974.

Nicholas M. Karzen, Walter Williams, Ronald S. Samuels, Thomas J. Cachor, Chicago, Ill., for defendants-appellants.

James R. Thompson, U. S. Atty., Gary L. Starkman and Michael D. Groark, Asst. U. S. Attys., Chicago, Ill., for plaintiff-appellee.

Before FAIRCHILD and CUMMINGS, Circuit Judges, and JAMESON, Senior District Judge.*

* Senior Judge William J. Jameson of the District of Montana is sitting by designation.

FAIRCHILD, Circuit Judge.

Four defendants, Wilson, Evans, Collins, and Patton appeal from judgments on conviction of counts charging participation in a mail fraud scheme. 18 U.S.C. § 1341.

Each count of thirteen, some of which did not involve these defendants, described a scheme to defraud the American Oil Company in which Travis W. Allen obtained possession of checks of American Oil Company issued to reimburse its dealers for sales made to credit card customers, and these defendants and others would negotiate the checks by depositing them in existing checking and savings accounts or accounts opened in fictitious names and then withdrawing the proceeds. Each count charged that Allen alone or with another defendant mailed an American Oil check to a bank (or in one instance to an individual) for the purpose of executing the scheme.

## I. PROOF OF THE ALLEN SCHEME AND PARTICIPATION BY THE DEFENDANTS.

Defendant Allen and one other were fugitives at the time of trial. Other defendants pleaded guilty early in the trial. The trial then proceeded on two counts charging Collins and one count charging each of the other three defendants now appealing. There was eye-witness testimony as to the association between the defendant Collins and Allen, but the Government relied wholly on circumstantial evidence to connect defendants Wilson, Evans and Patton with Allen. The latter three argue on appeal that the evidence was insufficient to prove that they had guilty knowledge concerning the checks and acted in concert as part of one common scheme.

Taking the view of the evidence most favorable to the Government, it is summarized as follows.

On various dates in October and December, 1971, American Oil Company issued at Chicago and processed for mailing a number of checks payable to retail dealers. The checks involved in this case were issued to dealers at points distant from Chicago and were deposited to various bank accounts in the Chicago area within a short period after the dates of issuance. Although the Government did not produce any of the payees to testify that the checks had not been received or that the indorsements were forged, the cashier of the American Oil Company testified that in each instance the Company had issued replacement checks and requested the First National Bank of Chicago, on which they were drawn, to stop payment on the original checks. Presumably personnel of the Company were satisfied that the checks had gone astray.

Ronald Hayes testified that in October, 1971, Allen told him that if Hayes would permit Allen to deposit a check in Hayes' bank account, they would split the proceeds. If asked about the check, Hayes was to say that he won it gambling. Hayes gave Allen a deposit slip for Hayes' account and Allen later told Hayes that Allen had deposited a check. These conversations occurred approximately Ocober 26.

On October 27, First National Bank received by mail a deposit slip and check for deposit to the savings account of defendant Marie Evans. The check was American Oil Company Check # 766789, dated October 13, 1971, in the amount of $3,982.77. It was payable to Peter Fuel Co., Oakland, Maryland and was indorsed "Peter Fuel Corp.—F. W. Peters Dist. Marie Evans." Her balance before the deposit was $52.27. On November 1, she withdrew $3,900.00 in cash and the withdrawal slip bears the notation "Refund Check." On November 4, she withdrew $134.04 in cash, leaving a balance of $1.00, the minimum required to keep the account open. When questioned later by postal authorities, she said she deposited the check as a favor to a man she had recently met in the company of Johnnie Mae Wilson and who had said he won it gambling. She said she had given him the proceeds but had not seen

him again. The mailing of the deposit to the bank was the mailing charged in Count 2 on which Mrs. Evans was found guilty.

On October 23, there was a deposit to the checking account of Johnnie Mae Wilson (not a defendant, presumably because the deposit was not made by mail). The deposit consisted of an American Oil Company Check # 768874, dated October 21, 1971, in the amount of $6,199.40. It was payable to Laurie Kirby, Lake City, Florida and indorsed "Laurie Kirby   Johnnie M. Wilson."

On October 29, the Standard Bank received by mail a deposit slip and check for deposit to the checking account of Albert Wilson, Jr. and Idell Wilson, the parents of defendant Maxine Wilson. The check was American Oil Company Check #768875, dated October 21, 1971, in the amount of $3,877.17. It was payable to Knoxoil Co., Knoxville, Tennessee and was indorsed "Knoxoil Co.   Frank Marcus Pres.   Albert Wilson Jr." On November 9, the Standard Bank processed a check on the Wilson account payable to cash in the amount of $3,800.00. When later questioned, defendant Wilson said she had deposited the check to her father's account as a favor to a man she had recently met and who said he had won it gambling. She had given him $3,800.00 of the proceeds and had not seen him again. The mailing of the deposit was the mailing charged in Count 7, on which Miss Wilson was found guilty.

Lee Davis (named in the indictment as a participant but not a defendant) testified that in late November, 1971, he met defendant Collins while looking for work. A few days later, Collins introduced Davis to Allen. Collins told Davis in Allen's presence that he could make some money by opening a bank account and turning over the deposit slips to Allen. On December 11, Davis opened a checking account under the name of Harry T. Bell at the Olympia State Bank and brought the slips and envelopes to Collins. Collins told Davis he would contact Allen and checks would be deposited in the bank account by mail. When notified that the checks had cleared, Davis was to arrange for people to withdraw from the account.

On December 30, 1971, Olympia State Bank received by mail a deposit slip and check for deposit to the Bell account. The check was American Oil Company Check # 782134, dated December 22, 1971, in the amount of $1,131.37. It was payable to R. L. Maxwell, Ruleville, Mississippi and was indorsed "R. L. Maxwell   Pay to the Order of Harry T. Bell   Harry T. Bell." Collins later instructed Davis to withdraw $1,000.00 and Davis wrote a check for $1,000.00 payable to his uncle who cashed it at the bank on January 8, 1972. Davis, kept $300.00 and gave the balance to Collins and Allen. The mailing of the deposit was the mailing charged in Count 8, on which Collins was found guilty.

On January 4, Olympia State Bank received by mail a deposit slip and check for deposit to the Bell account. The check was American Oil Company Check #782135, dated December 22, 1971, in the amount of $1,644.66. It was payable to R. B. McCorkle, Greenville, South Carolina and was indorsed "R. B. McCorkle   Pay to the Order of Harry T. Bell   Harry T. Bell." Shortly before, Davis had mailed a bank envelope at Collins' request. Later, Collins instructed Davis to withdraw the proceeds. On January 13, Davis cashed a Bell check for $1,500.00, payable to cash, and took $1,100.00 to Collins and Allen. The mailing of the deposit was the mailing charged in Count 9, on which Collins was found guilty.

At the time Davis turned over the $1,100.00, Allen indicated he was mailing a $3,000.00 deposit to the Bell account. On January 14, Olympia State Bank received a deposit slip and check for deposit to the Bell account. The check was American Oil Company Check #782176, dated December 22, 1971, in the amount of $3,050.21. It was payable to Tom M. Phillips, Jasper, Georgia and

was indorsed "Tom M. Phillips, Harry T. Bell For Deposit Only." Unlike the other checks involved, the American Oil Company stop payment order arrived in time to prevent the clearing of this check at First National Bank and it was returned to Olympia State Bank on January 19. Collins told Davis to have people make withdrawals of $1,000.00 each, but when Davis sent a friend to the Olympia State Bank on January 23 to cash a check, the friend was arrested.

On January 10, the North Shore National Bank received by mail an American Oil Company Check #782177, dated December 22, 1971, in the amount of $7,285.62. It was payable to Geo. W. Pickering Co., Salem, Massachusetts and was indorsed "Geo. W. Pickering Pres Mary A. Patton Savings Account #124772." Because there was no deposit slip, a teller made one out for deposit to the savings account of defendant Mary Patton. The correct account number was 149118. The previous balance had been $327.94, $3.87 more than a loan outstanding against the account. On January 28, Mary Patton withdrew $5,000.00, $4,500.00 in cash and a $500.00 personal money order. She told the teller she was going to buy a car. On January 31, she withdrew $2,289.49, leaving a balance of $324.07, the exact amount of the loan held against the account. Also, on January 31, the $500.00 personal money order was cashed in the name of Cleveland Compton. The mailing of the deposit was the mailing charged in Count 11, on which Mrs. Patton was found guilty.

Preston Hawkins, Jr. testified that in late December, 1971, he won $1,000.00 from Allen gambling. Allen offered him an American Oil Company check but Hawkins refused it and Allen later paid him by other means. Hawkins saw that Allen had a number of American Oil Company checks drawn to different names and Allen said Hawkins could make money by cashing one of them. Hawkins refused. Hawkins also testified that defendant Evans was his neighbor and Cleveland Compton and Johnnie Mae Wilson, who lived together, also were neighbors and also visited back and forth. Hawkins had seen Allen talking with Compton and had seen Compton with several American Oil Company checks in large amount.

It seems clear that Allen had a means for obtaining recently issued American Oil Company checks at times during October and December, 1971. Since they were to be mailed to dealers in distant locations, it could be expected that some period would elapse before the failure to receive the check could be reported to American Oil. In the interim, checks could be deposited in personal accounts of confederates, the time allowed for clearance would expire, and the money could be withdrawn. There is ample evidence that defendant Collins joined Allen (and Davis) in the enterprise. Indeed, Collins makes no claim on appeal that the evidence was insufficient.

█ We think there is sufficient circumstantial evidence to link the other defendants with Allen in knowing participation in his scheme.

Similarities between the Evans, Maxine Wilson and Mary Patton transactions, on the one hand, and the Collins transaction in which Allen's participation was directly shown, and the transactions which Allen proposed to Hayes and Hawkins are themselves persuasive that there was an Allen scheme in which each defendant participated. The checks involved are all of one maker and all came promptly into the possession of the persons depositing them. This fact with other circumstances indicates that all the checks came through Allen. Defendant Evans, Johnnie Mae Wilson and Cleveland Compton knew each other. Compton's contact with Allen and possession of American Oil Company checks were directly established. Defendant Evans' implausible exculpatory statement indicated that Johnnie Mae Wilson may have had a similar experience and was similar to the exculpatory statement given by Maxine Wilson and the explanation suggested by Allen to Hayes. The

similar Johnnie Mae Wilson transaction involved a check of the same date and immediately prior in sequence to the check deposited by the defendant Maxine Wilson in her parents' account. The check deposited by defendant Mary Patton was issued the same date and immediately followed in sequence the check deposited by Allen in the Bell account on January 14. The $500.00 personal money order which represented part of the proceeds of the check deposited into the Patton account was cashed by Cleveland Compton. Although the failure of the payees to receive the checks and the forgery of their indorsements was not directly proved, the fact that these several checks payable to persons considerable distances from Chicago were negotiated in the Chicago area within a short period after issuance, and the willingness of American Oil Company to issue replacement checks are a sufficient basis for the inference that they were stolen,[1] and, of course, recently stolen so as to permit the inference of guilty knowledge on the part of the defendants into whose accounts they went without plausible explanation.[2]

We think these circumstances sufficiently establish the existence of an integral Allen scheme in which each defendant knowingly participated and either mailed or caused the mailing charged against him or her, whether each defendant was aware of the identity and participation of the other defendants or not.

■ Even where a number of defendants are charged with having conspired together, the Government need not prove that defendants knew each other's identity or had direct contact with each other, although they must know of each other's existence. United States v. Varelli, 407 F.2d 735, 742 (7th Cir. 1969); United States v. Nasse, 432 F.2d 1293,

1297 (7th Cir. 1970), cert. denied, 401 U.S. 938, 91 S.Ct. 927, 28 L.Ed.2d 217.

Here the indictment did not charge conspiracy. In each count, one defendant on trial is charged, together with Allen, with having deposited and caused to be deposited certain mail in execution of a described scheme. It is alleged that the defendants on trial, Allen, and others devised the scheme. The identity of the Allen scheme being sufficiently established, and also the knowing participation in it by the defendant in a particular count, we think there is no sound reason why that defendant need be proved to have known of the activities of other defendants other than Allen in order to prove that defendant's guilt on that count.

■■ It is not essential that the indictment contain a separate count charging conspiracy in order to take advantage of the doctrines peculiar to conspiracy. United States v. Joyce, 499 F.2d 9, 16 (7th Cir. 1974). In a prosecution for mail fraud, once agreement to a scheme has been adequately established, any party to the agreement is responsible for the acts and declarations of another party in furtherance of the common scheme, whether or not he knew of or agreed to any specific mailing. United States v. Joyce, *supra*.

## II. SEVERANCE.

■ Defendants Collins, Wilson and Patton argue that each was prejudiced by being tried jointly with the others. The Government's short answer is that none of them requested severance. Moreover, a good deal, if not all, of the same evidence would have been admissible to show the character of the Allen scheme in a separate trial of Collins and probably not only admissible, but essential because of the circumstantial nature of the proof, in the separate trial of

1. The jury may "make common sense inferences from proven facts." Webb v. United States, 347 F.2d 363, 364 (10th Cir. 1965) ; United States v. Hines, 256 F.2d 561, 564 (2d Cir. 1958). See United States v. Zimple, 318 F.2d 676, 680 (7th Cir. 1963), cert.

denied, 375 U.S. 868, 84 S.Ct. 128, 11 L.Ed. 2d 95.

2. Barnes v. United States, 412 U.S. 837, 845, 93 S.Ct. 2357, 37 L.Ed.2d 380 (1973).

each of the others. We are unable to discern prejudice in a joint trial.

### III. REFUSAL OF REQUESTED INSTRUCTION.

Defendants requested an instruction as follows:

The Government has charged that the defendants joined with each other and with Travis Allen in a scheme to defraud the American Oil Company. That is, the Government has alleged that the defendants acted together or jointly, in furtherance of a single common scheme to defraud. I instruct you that you may not find any of the defendants guilty unless you first find that the Government has proved beyond a reasonable doubt that there was such a single common scheme to defraud.

If you find that a reasonable doubt exists as to whether there was, or may have been, a series of separate and distinct schemes, then you must find all defendants not guilty.

If you find that the defendants were not acting as part of the same scheme, then you must find them not guilty, even if you find that they, or any of them, acted with intent to defraud.

The court did not give the instruction in the form requested. It did, however, instruct that the Government must prove beyond a reasonable doubt that defendants or any one or more of them participated in a scheme to defraud and that the mails were used in furtherance of it. It instructed at some length concerning the meaning of a "joint enterprise mail fraud scheme" or the proof required to establish that there was such a scheme and that a defendant was knowingly a member of it; that the jury should first determine whether or not "the mail fraud joint enterprise existed as alleged in the indictment"; and then whether a defendant willfully becomes a member of it. After pointing out that "one may become a member of a criminal joint enterprise without full knowledge of the full details" but that "a person that has no knowledge of such joint enterprise, but happens to act in a way which furthers some object or purpose of the said joint enterprise, does not thereby become a member." The court stated that before a finding of membership could be made "the evidence in the case must show beyond a reasonable doubt that the joint enterprise was knowingly formed and that defendant or any other person ‘who is claimed to have been a member willfully participated in the unlawful plan with the intent to advance or further some object or purpose of the joint enterprise."

For reasons indicated above in Part I, the instructions given by the court may have been more favorable to defendants than the law required, but in any event they adequately covered in substance the instructions requested by the defendants.

### IV. ALLEGED CONFUSION AT TRIAL

All defendants on this appeal argue that they were prejudiced by what they termed confusing, inconsistent and disorderly conduct of the trial. It is clear, of course, that the Government labored under difficulties in the absence of Allen who was a central figure. Evidence that might readily have been admissible against him was admissible against the defendants on trial only conditionally and upon a representation that when all the evidence was in its relevancy and probative force against defendants on trial, would become apparent. The same was true of evidence of transactions by other persons not on trial but allegedly establishing a similar pattern with such clarity as to be circumstantial evidence that the transactions in which the defendants were directly involved were part of the same overall scheme. Evidence as to the activity of one defendant was not only immediately admissible against that defendant but when combined with a cumulation of evidence of the activity of others could

properly be considered circumstantially as evidence against all defendants.

The Government began the trial by offering various items of proof with the representation that they would ultimately be connected up. At first the district court accepted this procedure. Counsel for defendants meticulously objected to all proof not obviously and directly relevant to the respective defendants. The district court carefully sought during the course of trial to restrict for the time being the consideration of evidence offered by the Government to the defendant directly involved. In several instances the district court sustained defense objections to evidence of transactions which might, we think, within the court's proper discretion, have been admitted conditionally. The court did not instruct the jury at any time during trial that the Government had made a prima facie case of joint enterprise sufficient to permit consideration of evidence admitted against one defendant against others, but in the instructions after the close of trial the court told the jury that, subject to the usual qualifications, statements and acts by any person found to be a member of a criminal joint enterprise may be considered by the jury as evidence as to any defendant found to have been a member of the criminal joint enterprise.

▮▮ Our own reading of the record persuades us that the evidence and rulings made in the presence of the jury did not result in confusion likely to cause the jury to misapprehend the issues and the proofs. Surely the defense is in no position to object to rulings or instructions more favorable than the law requires.

The peculiarity of this case as against all defendants except Collins, as to whose transactions with Allen there was eyewitness testimony, is that the jury could not convict unless it considered the characteristics of the transactions of all defendants as circumstantial evidence sufficient to establish the participation of that defendant with Allen in his scheme.

Notwithstanding the fact that much of the evidence was admitted with the limitation that it was to be considered against only one defendant, and that limiting instruction was not withdrawn during trial, we think the jury must have done what common sense would clearly require, and have considered all the similarities between the transactions and the other facts tending circumstantially to link the transactions together, set forth under Part I, in order to determine whether there was an Allen scheme as described in the indictment, adhered to by each defendant on trial, and furthered by the particular mailing charged to each defendant.

## V. DISPARITY OF SENTENCE.

Defendant Collins was sentenced to imprisonment for five years on each count to run consecutively. Proof as to him indicated a very active role in the Allen enterprise. Defendants Evans, Wilson and Patton, each of whom negotiated one check, were sentenced to imprisonment for one year. Defendants who had pleaded guilty in the early stages of the trial had been placed on probation. Defendants Evans, Wilson and Patton argue that the disparity between their sentences and the sentences of probation constituted punishment for exercising their right to stand trial.

▮ It has been held that a disparity between a sentence imposed on a defendant who pleads guilty and on another who is convicted after trial is not, standing alone, enough to establish that the latter has been punished for exercising a constitutional right.[3]

▮ The one year sentence imposed here cannot be deemed severe for the type of activity of which these defendants were convicted. Although a heavier sentence for one who has been convicted after trial and a lighter sentence

---

3. United States v. Melendez, 355 F.2d 914, 917 (7th Cir. 1965); Simpson v. United States, 342 F.2d 643, 645 (7th Cir. 1965).

for one who pleads guilty are in a sense two sides of the same coin, it is within proper bounds for the court to preserve some leeway so that it is able to extend leniency in consideration of the cooperation and at least superficial penitence evidence by one who pleads guilty. Here, as in United States v. Lehman, 468 F.2d 93, at 109 (7th Cir. 1972), the district court made remarks suggesting that these defendants might have enjoyed the same leniency extended to those who pleaded guilty, but we think the discussion in *Lehman* applies here, as well.

■ Although we do not agree with the claims of the three defendants who received one year sentences, just discussed, we do conclude that in the particular circumstances it was an abuse of discretion to dispense with a presentence investigation and impose a sentence of imprisonment on these three without the benefit of a report.

The information about these three defendants available to the district court and bearing upon an appropriate sentence was unusually limited. Evidence concerning their transactions was entirely circumstantial, revealing nothing more about their character than the fact of guilt and that Mrs. Evans and Miss Wilson, but not Mrs. Patton, gave false explanations to postal authorities. They did not testify, and except for brief allocution, the court had little opportunity to evaluate them as individuals. None of them had a criminal record except in connection with the transactions at bar.

Counsel brought out that Miss Wilson is 22 years old, unmarried, lives with her parents, and has been steadily employed since leaving high school. Mrs. Patton is 40, married but separated, is regularly employed, and has supported four children and her mother. Mrs. Evans is 33, married, and with two children.

■ Dispensing with a presentence investigation is discretionary under present Rule 32(c), F.R.Cr.P., although an amendment, proposed by the Supreme Court, but not yet effective, would require the court to state its reasons for not having such investigation. Review of the failure to call for one has usually resulted in a determination that the court's discretion was not abused, United States v. Rosciano, 499 F.2d 166 (7th Cir. 1974), and cases cited therein. We think, however, that the paucity of relevant information about these three defendants, in the light of the amount of information which would probably have been produced in a presentence report, made it an abuse of discretion to dispense with one.

## VI. CLAIMS OF ERROR RAISED BY DEFENDANT EVANS.

### A. *Sufficiency of the Indictment.*

Count 2 charged in summary that Allen and others including Evans devised a scheme to defraud American Oil Company in which Allen would obtain stolen checks and would "request, persuade, inform and otherwise arrange for" each of the other defendants to assist in negotiating the checks by depositing them in accounts and withdrawing the proceeds, and that Allen and Evans for the purpose of executing the scheme, knowingly and willfully mailed and caused to be mailed a specific American Oil Company check to the First National Bank.

■ If we understand defendant Evans' argument, it is that since her deposit of the stolen check may have been otherwise arranged for, the element of guilty intent on her part has not been sufficiently charged. Count 2 did, however, charge her with participation in devising the scheme to defraud and knowingly and willfully using the mail to execute it. We can find no defect in the indictment.

### B. *Bill of Particulars.*

Defendant Evans sought a particularization of certain elements of the indictment. She asked that the Government be required to state whether Allen requested, persuaded, informed or otherwise arranged for her to assist in negotiating the checks; to define what "oth-

erwise arrange for" means; to state the false and fraudulent pretentions, representations and promises referred to, who made them, to whom made, and when made; and to state whether Allen or Evans is alleged to have stolen the checks.

 Defendant Evans concedes that ordering a bill of particulars is within the court's discretion. Here the documentary evidence in respect to Evans was made available to her in advance of the trial. The Government was apparently unprepared to show the details as to how Allen obtained Evans' assistance, by whom the checks were stolen, nor the false pretenses involved other than those implicit in depositing a check with a forged indorsement. As already set forth, the proof that these things must have happened was circumstantial. It has not been demonstrated that there was any surprise on her part at the evidence during the course of trial nor other prejudice as a result of the denial of the requested particulars.[4]

### C. *Inadvertent Misdirection by Court*

During the course of testimony by the postal inspector relating successive interviews with defendants Collins, Evans and Wilson, the court inadvertently named Evans rather than Wilson as the person to whose case certain testimony should be limited. The misunderstanding and misstatement were corrected. We consider frivolous the claim that the jury was misled.

On the appeal of defendant Collins, the judgment of conviction and sentence are affirmed. On the appeals of defendants Wilson, Evans, and Patton, the judgments of conviction are affirmed, but the sentences are vacated and the causes remanded for resentencing after investigations and reports under Rule 32, F.R.Cr.P.

CUMMINGS, Circuit Judge (dissenting in part).

I concur in Judge Fairchild's opinion with the exception of the *sua sponte* remandment for resentencing after a presentence investigation and report are completed as to defendants Wilson, Patton and Evans. Surely seasoned counsel would have presented this argument if warranted on this record. In my view, there was no abuse of discretion in not ordering a presentence investigation and report for each of these three defendants, even though it is generally the better practice to do so. United States v. Rosciano, 499 F.2d 166, 169 (7th Cir. 1974). Therefore, I would affirm the judgments.

---

4. See United States v. Hutul, 416 F.2d 607, 625 (7th Cir. 1969), cert. denied, 396 U.S. 1012, 90 S.Ct. 573, 24 L.Ed.2d 504 and United States v. Wells, 387 F.2d 807, at 808 (7th Cir. 1967).