**UNITED STATES of America,
Appellee,**

**v.**

**Stuart Allen PERKAL, Appellant.**

**No. 75–1435.**

United States Court of Appeals,
Fourth Circuit.

Argued Dec. 1, 1975.

Decided Jan. 30, 1976.

Joseph Forer, Washington, D. C., for appellant.

James M. Kramon, Sp. Asst. U.S. Atty., Baltimore, Md. (Jervis S. Finney, U.S. Atty., and Parker B. Smith, Asst. U.S. Atty., Baltimore, Md., on brief), for appellee.

Before RUSSELL, FIELD and WIDENER, Circuit Judges.

RUSSELL, Circuit Judge:

Convicted of violation of the federal mail fraud statute,[1] and of aiding and abetting the violation thereof,[2] the defendant has appealed. In essence, he contests the sufficiency of the evidence. We find the evidence sufficient to support the conviction and affirm, except for correction of sentence, as hereinafter provided for.

The defendant does not deny the existence of a fraudulent scheme and practice or his participation in it. It is his contention on appeal that his connection with the scheme was not such as to bring his conduct within the mail fraud statute. The object of the scheme was the bilking of liability insurance carriers through the submission of inflated and false claims of disability and medical expense on behalf of personal injury claims arising out of automobile accidents. These claims were used as a basis for making settlements with the insurance carriers. Normally, it seems to have been the practice in the Baltimore area to base such settlements on a multiple of the medical bills as submitted. Accordingly, by inflating the medical bills with statements of fictitious or exaggerated services the parties to the scheme inflated the settlement.

The execution of the scheme involved three parties: The "runner" who contacted the injured party and steered him to either the doctor or the lawyer; the doctor who examined the claimant, prepared a report of the claimant's alleged injuries and submitted a bill for medical services; and the lawyer, who represented as attorney the claimant, submitted to the insurance carriers the exaggerated medical bills and reports, made settlement on the basis of such inflated bills and reports, and then divided the proceeds among the claimants and the three parties to the scheme. All the participants, including the defendant, depended on the receipt of the settlement drafts for their profit from the scheme and all, in their separate roles, were vital and essential cogs in the conduct of the fraudulent scheme.

As we have already indicated, the defendant admits that the scheme was a fraudulent one which fleeced the insurance companies of substantial sums and furnished him in turn with a handsome income. It is his contention, however, that despite his participation and profit from the fraudulent scheme, he was immune from prosecution under the mail fraud statute either as principal or as an aider and abettor. We disagree.

§ 1341, 18 U.S.C., declares that "[W]hoever, having devised or intending to devise any scheme or artifice to defraud," uses the mails "for the purpose of executing such scheme or artifice" violates such statute. While conceding that the elements of a mail fraud violation of the statute are (1) a fraudulent scheme and (2) the use of the mails in furtherance of that scheme,[3] the defendant asserts that the statute limits its application to "[W]hoever, having devised or intending to devise" the fraudulent scheme and by so doing makes only the actual originator of the scheme culpable under the statute. Assuming this construction, he contends that the lawyer in the scheme involved here, and not the defendant, was the obvious originator of the scheme. Under this theory, the defendant, even though an essential and active participant in the fraudulent

---

1. 18 U.S.C. § 1341 (1970).

2. 18 U.S.C. § 2 (1970).

3. *United States v. Grow* (4th Cir. 1968) 394 F.2d 182, 205, *cert. denied* 393 U.S. 840, 89 S.Ct. 118, 21 L.Ed.2d 111 (1968).

scheme, it is argued, would not be punishable under the statute. Without deciding whether the record will justify the defendant's assumption that the lawyer was the originator of the scheme, it is clear that the defendant's contention as to the scope of the statute is erroneous. It has long been settled, contrary to the defendant's construction of the statute, that anyone who "knowingly and intentionally" participates in the execution of the fraudulent scheme comes within the prohibition of the statute [4] and this is true whether the indictment charges a conspiracy or not.[5] This is made plain in *Reistroffer v. United States* (8th Cir. 1958) 258 F.2d 379, 395, *cert. denied* 358 U.S. 927, 79 S.Ct. 313, 3 L.Ed.2d 301 (1959), *reh. denied* 361 U.S. 856, 80 S.Ct. 42, 4 L.Ed.2d 96 (1959), and has often been reiterated in subsequent cases. In answering an argument similar to that advanced by the defendant, the Court in *Reistroffer* said:

"The members of this Court are unanimously of the opinion that the evidence adduced against defendant Norris was sufficient to constitute a prima facie case and to support the verdict and judgment against him. If believed, it established that the gist of the scheme to defraud was brought to his knowledge and that he joined in with the principal schemers to accomplish their purposes. It is not necessary for the government to prove that he was one of those who originally devised the scheme. When he joined

in the selling and the misrepresentations and deceptions, although in comparatively few instances, he brought himself within the provisions of the statute."

▪ The defendant urges that, though he may have been a participant in the scheme, he did not place in any post office or authorized depository for mail matter the fraudulent doctors' bills and reports in execution of the scheme and thus did not violate the statute. However, it was declared years ago by Judge Learned Hand the terms "place" and "cause to be placed" in the statute did not mean that a defendant, to violate the statute, must personally deposit the critical matter in the mails or "must specifically authorize its deposit, it is enough if he knows that in the execution of the scheme letters are likely to be mailed, and if in fact they are mailed." *United States v. Cohen* (2d Cir. 1944) 145 F.2d 82, 90, *cert. denied* 323 U.S. 799, 65 S.Ct. 553, 89 L.Ed. 637 (1944). This construction has recently been restated in *United States v. Shepherd* (5th Cir. 1975) 511 F.2d 119, 121, where the Court said that "it is not necessary that the defendant himself place the matter into a mail depository, only that he have a reasonable basis to foresee that the mails will be used," it is, also, in conformity with the rulings of the Supreme Court in both *Pereira v. United States* (1954) 347 U.S. 1, 8–9, 74 S.Ct. 358, 98 L.Ed. 435 and *United States v. Maze* (1974) 414 U.S. 395, 399, 94 S.Ct. 645, 38 L.Ed.2d 603.

**4.** *United States v. Wilson* (7th Cir. 1974) 506 F.2d 1252, 1257; *United States v. Joyce* (7th Cir. 1974) 499 F.2d 9, 16–17, *cert. denied* 419 U.S. 1031, 95 S.Ct. 512, 42 L.Ed.2d 306 (1974); *Pritchard v. United States* (8th Cir. 1967) 386 F.2d 760, 764, *cert. denied* 390 U.S. 1004, 88 S.Ct. 1247, 20 L.Ed.2d 104 (1968); *Babson v. United States* (9th Cir. 1964) 330 F.2d 662, 665, *cert. denied* 377 U.S. 993, 84 S.Ct. 1920, 12 L.Ed.2d 1045 (1964); *Isaacs v. United States* (8th Cir. 1962) 301 F.2d 706, 726, *cert. denied* 371 U.S. 818, 83 S.Ct. 32, 9 L.Ed.2d 58 (1962); *United States v. Dukow* (W.D.Pa.1971) 330 F.Supp. 360, 364, *aff.* 465 F.2d 688; *United States v. Schall* (W.D.Pa.1974) 371 F.Supp. 912, 928, *aff.* 503 F.2d 1400, *cert. denied* 420 U.S. 993, 95 S.Ct. 1432, 43 L.Ed.2d 696 (1974), *reh. den.* 421 U.S. 972, 95 S.Ct. 1970, 44 L.Ed.2d 463 (1975).

**5.** *United States v. Grow, supra,* 394 F.2d at 203; *United States v. Wilson, supra,* 506 F.2d at 1257; *United States v. Joyce, supra,* 499 F.2d at 17.

In *United States v. Wilson, supra,* the Court said:

"It is not essential that the indictment contain a separate count charging conspiracy in order to take advantage of the doctrines peculiar to conspiracy."

Again, in *United States v. Joyce, supra,* it is stated:

" * * * We therefore have no hesitation in joining at least six other circuits in applying conspiracy principles to a multimember mail fraud scheme. The nature of the group activity is the same whether or not a conspiracy is charged."

There was testimony in this case from a lawyer associated in the scheme with the defendant to the effect that the defendant's purpose in submitting to him [the lawyer] the bills and reports was "so I could mail them to the insurance companies to discuss settlement." It cannot be gainsaid, in the light of this testimony, that the defendant knew that the fraudulent bills and reports were likely to be mailed and that the use of the mails in the submission of those bills and reports could "reasonably be foreseen."[6] It is of no moment that in some instances other than those included in the separate counts of the indictment the bills may have been handed directly to the insurance adjuster and not mailed or that, as the defendant argues, all the bills and reports could have been so handed without the use of the mails. The fact of the matter is that the mails were normally used in the execution of the scheme and were admittedly used in all the cases specified in the indictment. That is sufficient to bring "the activity in question within federal criminal jurisdiction." See United States v. Flaxman (7th Cir. 1974) 495 F.2d 344, 348, cert. denied 419 U.S. 1031, 95 S.Ct. 512, 42 L.Ed.2d 306 (1974).

Of course, it is true, that the mailings must be "sufficiently closely related"[7] to, or "incident to an essential part of the scheme"[8] in order to bring the case within the statute. But there can be no question in this case that the mailings were crucial to the execution of the fraud. The material included in the mailings represented the essential basis on which the parties rested their fraudulent claim and "played a significant part in enabling the defendant" and his fellow participants to execute their scheme.[9] The mailings preceded and were essential to the true object of the scheme, i. e., the settlement of the inflated claim. As the Court said in United States v. Kenofskey (1917) 243 U.S. 440, 443, 37 S.Ct. 438, 439, 61 L.Ed. 836, when these mailings were made, "[T]he most vital element in the transaction * * * remained yet to become an actuality, i. e., the payment and receipt of the money." This case is quite different from Kann v. United States (1944) 323 U.S. 88, 65 S.Ct. 148, 89 L.Ed. 88, Parr v. United States (1960) 363 U.S. 370, 80 S.Ct. 1171, 4 L.Ed.2d 1277 and United States v. Maze, supra, in which the mailings occurred after the object of the fraud had been accomplished and were "irrelevant to the scheme." See United States v. Kelem (9th Cir. 1969) 416 F.2d 346, 349–50, 9 A.L.R.Fed. 885, 890–1, cert. denied 397 U.S. 952, 90 S.Ct. 977, 25 L.Ed.2d 134 (1969); United States v. Sampson (1962) 371 U.S. 75, 80, 83 S.Ct. 173, 9 L.Ed.2d 136.

Factually, this case is similar to United States v. Reicin (7th Cir. 1974) 497 F.2d 563, at 565, cert. denied 419 U.S. 996, 95 S.Ct. 309, 42 L.Ed.2d 269 (1974) and United States v. Sternback (7th Cir. 1968) 402 F.2d 353, cert. denied 393 U.S. 1082, 89 S.Ct. 862, 21 L.Ed.2d 774 (1968). Like the situation here, both of those cases involved schemes, participated in by lawyers and doctors, "to defraud insurance and other companies in personal injury cases by preparing and submitting false and exaggerated medical reports and bills * * * ."[10] In Sternback, it was the doctor who had been indicted and convicted under the mail fraud statute and in Reicin, it was the lawyer. The defendant would distinguish Sternback because, as he contends, the lawyer who submitted the bills there was an innocent party to the scheme, whereas, in this case, the lawyer was an active and knowing participant. We do not read Sternback as suggesting that the lawyer who submitted the bills was an

---

6. See United States v. Maze, supra, 414 U.S. at 399, 94 S.Ct. 645.

7. United States v. Maze, supra, 414 U.S. at 399, 94 S.Ct. at 648.

8. Pereira v. United States, supra, 347 U.S. at 8, 74 S.Ct. at 363.

9. See United States v. Maze, supra, 414 U.S. at 401, 94 S.Ct. at 649.

10. 497 F.2d at 565.

See, also, United States v. Bornstein (7th Cir. 1971) 447 F.2d 742, cert. denied 404 U.S. 851, 92 S.Ct. 88, 30 L.Ed.2d 91 (1971), which involved a scheme between an automobile garageman and an insurance adjuster to defraud the insurance carrier by inflated repair bills.

innocent participant in the scheme; indeed, we think the contrary to be the necessary inference from the opinion. In any event, we do not see why the fact that both the lawyer and the doctor in this case were knowing participants in the fraudulent scheme should provide the doctor-defendant with immunity. So far as *Reicin* is concerned, the defendant dismisses it as disclosing "no perceptible relevancy to the issues in this case," even though it involved a prosecution of one of the participants in a scheme similar in every respect to that presented by the facts in this case.

■ The defendant, also, claims error in the trial court's instruction. We have examined the charge and find no error therein. There is, however, merit in his contention that certain of the counts in the indictment, on which the defendant was convicted, "merged because of there being only one mailing." In fact, the Government concedes merger as to counts 16, 17, and 18, counts 24 and 26, counts 25 and 27, counts 28 and 29, counts 32 and 34 and counts 42 and 44. In addition, counsel for the defendant takes the position that counts 30 and 31 and counts 33 and 35 merged because they concerned one and the same mailing. This additional claim of the defendant presents no contest between the parties on the applicable legal principle; the parties agree as to this. Their difference principally is a factual one and the District Court is in better position to resolve that factual issue than we are. We accordingly remand the cause to the District Court for correction of the judgment and sentence, and appropriate remission of fines so as to give effect to the merger of such counts of the indictment as covered one and the same mailing as agreed on by the parties and for resolution of the issue whether there was a merger of counts 30 and 31, and counts 33 and 35. Except for remand for this purpose, the judgment of conviction is affirmed.