**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Michael SHAPIRO, Defendant-Appellant.**

No. 77–1205.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 20, 1977.

Decided Nov. 15, 1977.

Franklyn M. Gimbel, Milwaukee, Wis., for defendant-appellant.

William J. Mulligan, U.S. Atty., Terry E. Mitchell, Asst. U.S. Atty., Milwaukee, Wis., for plaintiff-appellee.

480

Before SWYGERT and WOOD, Circuit Judges, and CAMPBELL, Senior District Judge.[1]

SWYGERT, Circuit Judge.

Defendant-appellant Michael Shapiro appeals from a judgment and sentence entered upon a guilty verdict of a jury for conspiracy to misapply bank funds and aiding and abetting the misapplication of bank funds, violations of 18 U.S.C. §§ 371, 656, and 2.[2] We reverse.

I

Evidence adduced at trial showed that Shapiro and his codefendants maintained nine business and personal checking accounts at the First National Bank of Glendale, Wisconsin. Phyllis Wypiszynski, head bookkeeper at the bank, was responsible for monitoring such checking accounts. When dealing with a check on an overdrawn account, she had the authority either to reject the check or to allow payment on it. During the early part of 1972 Wypiszynski became aware of the overdrawn status of the Shapiro-related accounts. When she brought the matter to Shapiro's attention, he told her that his pending real estate deals would generate funds which would cover any overdrafts. She then allowed payment on the checks.

Helen Dornfield, Shapiro's personal secretary, maintained physical control of the accounts in question and prepared checks and deposits on a daily basis. Wypiszynski was frequently in contact with Dornfield about the overdrawn status of the bank accounts. Although some "good" money was deposited to cover the overdrafts, the majority of the deposits were checks drawn on other Glendale bank accounts which were also overdrawn. These deposits were made by Dornfield on instructions from Shapiro. The check-kiting scheme continued and expanded throughout 1973, eventually involving all nine of the accounts.

In December 1973, officers of the Glendale Bank questioned the status of these accounts and stopped all further activity. A bank audit indicated an overdrawn status of $687,335.48.

II

 The defendant initially contends that the trial judge committed prejudicial error by failing to remain impartial during the questioning of a witness before the jury and therefore should have declared a mistrial. We do not agree. After considering the record in its entirety, we conclude that any interjection by the trial judge had, at most, negligible effect. It is the judge's duty to "oversee the presentation of evidence and generally supervise the proper conduct of the trial . . . ." *United States v. Medansky,* 486 F.2d 807, 814 (7th Cir. 1973), *cert. denied,* 415 U.S. 989, 94 S.Ct. 1587, 39 L.Ed.2d 886 (1974). Additionally, the instruction given to the jury shortly after the incident as well as the charge to the jury at the close of the trial certainly overcame any possible prejudical effect. Therefore, we hold that the involvement of the trial judge during the examination of the witness did not amount to reversible error. Moreover, we find no merit in the defendant's claims of reversible error with respect to either the sufficiency of the evidence or the instructions tendered to the jury.

III

We turn to the more serious claim of reversible error, the admission of prior convictions. The defendant contends that the trial court abused its discretion by admitting into evidence his two prior convictions, one for bankruptcy fraud in 1938 and one for income tax evasion in 1952.

Rule 609 of the Federal Rules of Evidence deals with the impeachment of a witness by evidence of prior convictions. Subsection (b) addresses the question of time

---

1. The Honorable William J. Campbell, Senior District Judge for the Northern District of Illinois, Eastern Division, is sitting by designation.

2. Defendant's codefendants, Ben Libowsky, Jack LaKam, and Julius Rubin, his sons-in-law, pleaded guilty to lesser offenses prior to trial.

limitations on the admission of such evidence and provides that evidence of a conviction more than ten years old is not admissible "unless the court determines, in the interest of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect."

As originally submitted by the Supreme Court and adopted by the House Committee on the Judiciary, Rule 609(b) made impeachment by evidence of convictions totally inadmissible if more than ten years had elapsed since the date of conviction or of release from confinement. The Senate Committee disagreed with this approach and suggested there might be "exceptional circumstances" under which the conviction might substantially bear on the credibility of the witness. The Committee did note, however, that "[i]t is intended that convictions over 10 years old will be admitted very rarely and only in exceptional circumstances." Notes of the Committee on the Judiciary, Senate Report No. 93–1277, U.S. Code Cong. & Admin.News 1974, pp. 7051, 7062. Because of the differences between the House and Senate versions, the Conference Committee adopted a compromise, basically the Senate version with the addition of the notice requirement to avoid surprise.

 In exercising his discretion on admission of such evidence, the trial judge must consider several factors, most importantly the danger of unfair prejudice. When the prior conviction and the charged act are of a similar nature, the danger increases. The jury is more likely to misuse the evidence for purposes other than impeachment, that is, to regard the prior convictions as evidence of a propensity to commit crime or of guilt, despite instructions to the contrary. *See United States v. Harding*, 525 F.2d 84, 89–90 (7th Cir. 1975); 3 Weinstein's Evidence ¶ 609[02] at 609–59 through 60; Spector, *Impeaching the Defendant by His Prior Convictions and the Proposed Federal Rules of Evidence: A Half Step Forward and Three Steps Backward*, 1 Loyola U.L.J. 247, 248–51 (1970); Note, *To Take the Stand or Not to Take the Stand: The Dilemma of the Defendant With a Criminal Record*, 4 Colum. L.J. & Soc.Prob. 213 (1968). Because the probative value of a prior conviction on the issue of credibility tends to decrease with the passage of time, the danger of prejudice clearly increases. In the case before us, we are unable to find any "exceptional circumstances" which would justify the admission of the convictions.

The defendant in this case is an eighty-year-old man, convicted of both bankruptcy fraud and income tax evasion thirty-eight and twenty-four years earlier. In oral argument, the Government conceded its concern that the defendant had a grandfatherly appearance and that he would appear totally blameless on the stand. In other words, while arguing that the evidence had bearing on veracity, the Government sought to have the evidence admitted to prejudice the defendant by coloring the jury's idea of the type of person he was. Additionally, in view of the similarity between the prior convictions and the charged offense, the risk of unfair prejudice was especially great. Clearly, the probative value of such evidence did not substantially outweigh its prejudicial effect.

Accordingly, we find that the trial court committed error in admitting evidence of the defendant's prior convictions. Because we cannot state with fair assurance that the error did not have substantial influence on the jury's decision, the conviction cannot stand. *Kotteakos v. United States*, 328 U.S. 750, 763–65, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946). The conviction is reversed and the case remanded for a new trial.

WILLIAM J. CAMPBELL, Senior District Judge, concurring in part, dissenting in part.

I fully concur in Part II of the majority decision. But because Part III interferes with the discretionary powers of the district court in ruling on evidentiary matters, and because this interference tends to create inflexibility in the application of Rule 609(b) of the Federal Rules of Evidence, I respectfully dissent.

The legislative history of Rule 609 reflects considerable controversy in Congress over the use of prior convictions to impeach a witness' credibility. Perhaps no other provision of the Rules caused more heated debate among Representatives and Senators than Rule 609. Although Rule 609(b) generally prohibits the use of the convictions if more than ten years have elapsed from the date of conviction or a witness' release, the Rule does provide that the district court, upon a determination on the basis of specific facts and circumstances that the probative value of the conviction substantially outweighs its prejudicial effect, may allow the use of otherwise time-barred convictions for the purpose of attacking a witness' credibility.

The Rule commits the determination to the district court's discretion, thus reflecting the manner in which such evidentiary questions were considered prior to the enactment of the Rule. See: *United States v. Kowalski*, 502 F.2d 203 (7th Cir. 1974), *cert. denied*, 420 U.S. 979, 95 S.Ct. 1407, 43 L.Ed.2d 660 (1974); *United States v. DiVarco*, 484 F.2d 670 (7th Cir. 1973), *cert. denied*, 415 U.S. 916, 94 S.Ct. 1412, 39 L.Ed.2d 470 (1974); *United States v. Sternback*, 402 F.2d 353 (7th Cir. 1968), *cert. denied*, 393 U.S. 1082, 89 S.Ct. 862, 21 L.Ed.2d 774 (1969); *United States v. Pinna*, 229 F.2d 216 (7th Cir. 1956); *United States v. Allison*, 414 F.2d 407 (9th Cir. 1969), *cert. denied*, 396 U.S. 968, 90 S.Ct. 449, 24 L.Ed.2d 433 (1970); *United States v. Palumbo*, 401 F.2d 270 (2nd Cir. 1968), *cert. denied*, 394 U.S. 947, 89 S.Ct. 1281, 22 L.Ed.2d 480 (1969); *Gordon v. United States*, 127 U.S.App.D.C. 343, 383 F.2d 936 (1967), *cert. denied*, 390 U.S. 1029, 88 S.Ct. 1421, 20 L.Ed.2d 287 (1968); *Luck v. United States*, 121 U.S.App. D.C. 151, 348 F.2d 763 (1965).

The record in this case shows that prior to trial the government served notice on defendant of its intention to use evidence of defendant's prior convictions for impeachment purposes if the defendant should choose to testify. The record further shows that the district court employed the balancing test required by Rule 609(b) in making its determination that evidence of the prior convictions would be admissible if defendant chose to testify. In assessing the probative value of the prior convictions, Judge Warren considered the nature of the previous convictions, the similarity of the previous crimes with the crime charged in the instant case, and the importance to the defense of the defendant's own testimony and questions of credibility pertinent thereto. Having considered these factors, Judge Warren concluded:

"I think you have, to some degree, a conflict between several of these factors because the Rule also talks about crimes involving, I believe the word is false statement or dishonesty and when one looks at bankruptcy fraud, tax evasion, and the bank embezzlement, it seems to me that you have false statement and dishonest representations involved in those and yet you have to weigh that against the danger that if the crime is too close in kind, that then the jury will be inclined to not weigh the evidence that it would just operate on the theory if a person did it once, they will do it again. So that I find that a difficult choice. I think there is a good public policy to be pursued in not berating or plaguing a defendant with old crimes for which he has paid a penalty and from which he hopefully has been rehabilitated and as has been pointed out, I suppose that is particularly important when one is dealing with crimes convicted or which were carried out at a tender age than when one is then subsequently dealing with a matured individual. I think we have a somewhat different situation in that the events seem to be spaced out throughout the individual's life. [Defendant's convictions occurred when he was 42 and 56 years of age.] We have got 38 years from now til the first one and the court is of the opinion that weighing all of these factors, I think that the degree of dishonest representation involved in each of the three crimes, coupled with the fact that I find it difficult to understand or to feel that the testimony of the defendant is that crucial to his defense. The Court

therefore, is going to deny the motion *in limine* and will permit the utilization of those two convictions if the defendant, in fact, takes the stand."

Implicit in Judge Warren's ruling was his belief that the jury should be allowed to hear evidence of prior convictions in assessing defendant's credibility. If the district court had not admitted such evidence, the jury would be given the appearance of a defendant with a long and blameless life, when, in fact, only the former characteristic was true.

Moreover, the record shows that immediately after evidence of the two convictions was introduced, the district court properly instructed the jury not once, but twice, as to the limited purpose of the evidence. In its general charge to the jury, the court again repeated the instruction. Further, nothing in the record indicates that the government made any improper use of this evidence.

In my view, the record in this case abundantly demonstrates careful and profound consideration by the district court of an evidentiary question in compliance with the requirements established by Rule 609(b). I cannot agree with the majority's conclusion that the defendant was unfairly prejudiced by the admission of evidence of prior convictions. Such a conclusion is tantamount to a finding of an abuse of discretion by the district court when the record simply does not justify such a finding.

On the issue of otherwise time-barred convictions, I believe Rule 609(b) provides a framework for discretionary ruling by the trial court. A reviewing court's reversal of a determination by a trial court on an evidentiary question, when the record fully supports the trial judge's determination in compliance with the Rules, can only serve to create the type of confusion and inflexibility in the trial courts which the Federal Rules of Evidence were designed to eliminate. I respectfully dissent.