**UNITED STATES of America, Plaintiff,**

v.

**Owen Marshall BROWN, et al., Defendants.**

**No. 94 CR 769.**

United States District Court, N.D. Illinois, Eastern Division.

July 19, 1995.

Joshua Buchman, U.S. Atty., Chicago, IL, for USA.

Gerald Joseph Collins, Chicago, IL, for Sheila A. Hall.

Gary Jay Ravitz, Chicago, IL, for Mattie Roberts.

Carl Peter Clavelli, Chicago, IL, for Victor Roberts.

Sheldon Bart Nagelberg, Chicago, IL, for Constance Gatlin.

Rhoda Davis Sweeney, Rhoda Davis Sweeney, P.C., Chicago, IL, for Linda D. Cunningham.

Lawrence Edmund Sommers, Glenn Seiden & Associates, Chicago, IL, for Stacy Senior.

Stephen E. Eberhardt, Chicago, IL, for Keith D. Grice.

Thomas Anthony Durkin, Thomas Anthony Durkin, P.C., Chicago, IL, for Ernest L. Sivels.

Marianne Jackson, Chicago, IL, for Lisa Roberts.

Michael Gregory Logan, Chicago, IL, for Perry L. Sykes.

Ronald A. Bredemann, Flood & Bredemann, Des Plaines, IL, for Terry Thompson.

Terry Thompson, Oak Park, IL, pro se.

Micky Forbes, People's Law Offices, Chicago, IL, Nan Rogers Nolan, Chicago, IL, for Rosetta Dotson.

Bradley Jay Harris, Oak Brook, IL, for Lorenzo Morgan.

Michael Sean O'Connell, O'Connell & Ryan, Chicago, IL, for Carlos R. Green.

Ronald J. Clark, Chicago, IL, for Beverly A. Williams.

Robert G. Clarke, Chicago, IL, for Ardelia Myles.

John A. Meyer, Law Offices of John A. Meyer, Chicago, IL, for Susan Wells.

## MEMORANDUM OPINION AND ORDER

CASTILLO, District Judge.

Defendants Owen Marshall Brown, et al., move to dismiss[1] count one of the Government's indictment, which alleges that the defendants participated in a common scheme of bank fraud in violation of 18 U.S.C. §§ 2 and 1344. The defendants allege that count one is duplicitous in that it impermissibly alleges multiple schemes in a single count. Defendants also move for severance[2] pursuant to Federal Rules of Criminal Procedure 8(b) and 14 on the basis that joinder of defendants in this case is improper and/or prejudicial. For the reasons set forth below, the defendants' Motion to Dismiss and Motion for Severance are denied.

## BACKGROUND

Count one of the indictment alleges that over a period of two and one-half years, the thirteen defendants executed a scheme to defraud twenty-two Chicago-area financial institutions, in violation of 18 U.S.C. §§ 2 and 1344,[3] by depositing or directing others to deposit into the financial institutions' accounts worthless, stolen and forged checks

payable to the order of the defendants and various fictitious individuals and drawing against the accounts before the banks discovered the fraud. The government alleges that defendant Owen Marshall Brown ("Brown") and various co-schemers provided these worthless, stolen or forged checks to co-schemers and other individuals and directed them to deposit the checks at financial institutions and to give false information to the institutions and law enforcement agents if questioned about the checks. The alleged co-schemers deposited the checks into their bank accounts and withdrew a portion of the face value of the checks before the banks discovered that the checks were worthless. The co-schemers allegedly retained a portion of the withdrawn funds and gave the remainder to Brown. The government also alleges that several co-schemers aided Brown by providing him with telephones, names and addresses of potential participants, and transportation.

The government does not allege that all of the thirteen co-schemers knew of each of the others' existence, identity, and/or participation in the scheme. The indictment names twenty-one separate and unrelated instances of bank fraud. The only common participant in every act of alleged fraud is Brown. Several of the named co-schemers only allegedly participated in one or two acts of bank fraud and appear to have been largely unaware of the magnitude of the larger scheme.[4]

---

1. The fourteen defendants joining in the Motion to Dismiss are as follows: Owen Marshall Brown, Linda Cunningham, Rosetta Dotson, Constance Gatlin, Carlos Green, Keith Grice, Sheila A. Hall, Lisa Roberts, Mattie Roberts, Victor Roberts, Stacy Senior, Ernest Sivels, Perry L. Sykes, and Terry Thompson. Defendant Lorenzo Morgan initially joined in the Motion to Dismiss but has since pled guilty.

2. The thirteen defendants joining in the Motion for Severance are the same as those listed in Footnote 1, with the sole exception of Owen Marshall Brown.

3. § 2(a) provides:
   Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.
   18 U.S.C. § 2(a) (1969).

§ 1344 provides:
   Whoever knowingly executes, or attempts to execute, a scheme or artifice—
   (1) to defraud a financial institution; or
   (2) to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations or promises;
   shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.
   18 U.S.C. § 1344 (1995).

4. Defendants Rosetta Dotson, Constance Gatlin, Carlos Green, Keith Grice, Victor Roberts, Perry Sykes, Stacy Senior and Ernest Sivels each were allegedly involved in only one transaction. Defendant Lisa Roberts was allegedly involved in two transactions. Terry Thompson was allegedly

In the Motion to Dismiss, the defendants argue that count one of the indictment is duplicitous in that it impermissibly alleges multiple schemes in a single count. The defendants assert that the single count improperly alleges several distinct and separate bank fraud schemes. They further assert that Brown's presence as a central figure in each of the instances of fraud does not suffice to establish the existence of a single scheme. They argue that an individual defendant's participation in one act, absent any understanding of or agreement regarding a larger scheme, does not suffice to demonstrate a unified scheme to defraud. The defendants therefore move to dismiss count one on the basis of duplicity.

In the Motion for Severance, the defendants argue that the joinder of defendants at trial is improper pursuant to Rule 8(b) and/or prejudicial pursuant to Rule 14. The defendants request separate trials for the following reasons: (1) they were involved in separate, distinct schemes unrelated to one another and thus joinder is improper under Rule 8(b); (2) the evidence that the government will seek to introduce against Brown is grossly disparate from the evidence that will be introduced against the other defendants, who each played a far smaller role in the alleged fraudulent acts, and will prejudice the other defendants in violation of Rule 14; (3) the government plans to introduce at trial evidence of some defendants' prior convictions that will prejudice the other defendants in violation of Rule 14; (4) the government plans to introduce statements made by some of the defendants that would not be admissible in separate trials and will incriminate and prejudice other defendants in violation of Rule 14; and (5) separate trials will promote judicial efficiency and economy because counsel for those defendants who played a minor role in Brown's scheme, all of whom are court-appointed public defenders, will not be obligated to appear at public expense throughout a lengthy and complicated trial at which much of the evidence will not involve their clients.

involved in three transactions. Def.'s Mot. to

## ANALYSIS

### Motion to Dismiss

■ A duplicitous indictment is one that charges more than one offense in a single count. *United States v. Hammen,* 977 F.2d 379, 382 (7th Cir.1992). The Seventh Circuit has articulated four concerns from which the ban against duplicitous indictments is derived:

> First, courts condemn duplicitous indictments which fail to give defendants adequate notice of the nature of the charges against which they must prepare a defense.... Second, courts denounce duplicitous counts which threaten to subject defendants to prejudicial evidentiary rulings at trial.... Third, courts dismiss duplicitous indictments which produce trial records inadequate to allow defendants to plead prior convictions or acquittals as a bar to subsequent prosecution for the same offense.... Finally, courts overturn duplicitous indictments which present a risk that the jury may have convicted a defendant by a non-unanimous verdict.

*United States v. Kimberlin,* 781 F.2d 1247, 1250 (7th Cir.1985) (citations omitted), *cert. denied,* 479 U.S. 938, 107 S.Ct. 419, 93 L.Ed.2d 370 (1986).

■ In support of their assertion that count one is impermissibly duplicitous, the defendants cite two conspiracy cases in which the court deemed the mere presence of a central figure in a series of offenses insufficient to allege a conspiracy involving all participants. *See Kotteakos v. United States,* 328 U.S. 750, 754–55, 66 S.Ct. 1239, 1242–43, 90 L.Ed. 1557 (1946) (finding the facts alleged in the indictment insufficient to support a charge of one unified conspiracy, regardless of the presence of a single defendant at the "hub" of the wheel, because the "rim" of the wheel did not enclose the defendants who comprised the "spokes"); *United States v. Bruun,* 809 F.2d 397, 410 (7th Cir. 1987) (reversing a conspiracy conviction because the government had failed to prove that the defendant was aware of the essential nature and scope of the enterprise and intended to participate in it).

Dismiss at 3.

The government, however, has not charged the defendants with conspiracy, but rather with a common scheme of bank fraud. Under 18 U.S.C. §§ 2 and 1344, a defendant is liable for bank fraud as a principal or as an aider an abettor, not as a conspirator. "As an aider and abettor [to a scheme of fraud], [the defendant] need not agree to the scheme. He need only associate himself with the criminal venture and participate in it." *United States v. Read*, 658 F.2d 1225, 1240 (7th Cir.1981) (citing *United States v. Beck*, 615 F.2d 441, 448–49 (7th Cir.1980)). In this case, the scheme is unified by the presence of the defendant Brown in each alleged act of fraud. The defendants' assertion that many of the alleged co-schemers were unaware of the existence of a larger scheme, while fatal to an allegation of conspiracy, is irrelevant to an allegation of a common scheme. *See United States v. Wilson*, 506 F.2d 1252 (7th Cir.1974) (upholding defendant's conviction for fraud where a co-defendant had misdirected checks to various unrelated co-schemers, including the defendant, who would negotiate the checks and split the proceeds, where the co-schemers had knowingly participated in the fraud, "whether each defendant was aware of the identity and participation of the other defendants or not"). *Id.* at 1257. We therefore find the conspiracy cases cited by the defendants inapplicable to the government's instant allegation of a common scheme of bank fraud.

The defendants argue that the government's pretrial proffer, submitted pursuant to *United States v. Santiago*, 582 F.2d 1128 (7th Cir.1978), demonstrates the government's intent to introduce evidence at trial under Federal Rule of Evidence 801(d)(2)(E), and thus benefit from the evidentiary principles concerning conspiracy without actually alleging the existence of a conspiracy. It is well-settled, however, that the government need not charge criminal conspiracy in order to invoke the evidentiary co-conspirator exception. *United States v. Cox*, 923 F.2d 519, 526 (7th Cir.1991) (citing *Santiago*, 582 F.2d at 1130); *United States v. Coe*, 718 F.2d 830, 835 (7th Cir.1983) (citing *United States v. Gil*, 604 F.2d 546, 549 (7th Cir.1979)). As a predicate to admissibility, the government must, however, demonstrate to the court by a preponderance of the evidence that "1) a conspiracy existed, 2) the defendant and the declarant were members thereof, and 3) the proffered statement(s) were made during the course of and in furtherance of the conspiracy." *Cox*, 923 F.2d at 526 (citing *Santiago*, 582 F.2d at 1134–35).

After careful review of the government's proffer with respect to co-conspirator statements, the Court preliminarily concludes that the government has met its burden of proof with regards to whether it is more likely than not that a conspiracy existed among the co-schemers. The government's written proffer carefully describes the details of each alleged fraudulent transaction, the actions of each defendant relating to the alleged fraudulent scheme, and the communications that occurred between the various defendants during the course of and in furtherance of the alleged scheme. Based upon the *Santiago* proffer, we find that it is more likely than not that a conspiracy existed, that the defendants participated in the conspiracy, and that they made statements "during the course of and in furtherance of" the conspiracy. We therefore rule that the co-conspirator statements are admissible conditionally pursuant to Rule 801(d)(2)(E) with respect to the following defendants: Owen Marshall Brown, Linda Cunningham, Constance Gatlin, Keith Grice, Sheila A. Hall, Mattie Roberts, Victor Roberts, Stacy Senior, Ernest Sivels, and Terry Thompson. With respect to the following defendants, however, the court will make a final determination at a pretrial evidentiary hearing regarding the admissibility of the specific co-conspirator statements sought to be admitted into evidence against them by the government: Rosetta Dotson, Carlos Green, Lisa Roberts, and Perry L. Sykes. *See* ¶ 1 of attached Exhibit A.

The defendants also invoke two of the four concerns noted by the Seventh Circuit in *Kimberlin*: first, that evidence of some defendants' prior convictions will prejudice all defendants, and second, that the evidence of the fraudulent transactions of some defendants will result in the conviction of other defendants on the basis of a non-unanimous verdict. This Court is mindful of the defen-

dants' concerns and intends to ensure that neither problem will materialize in this case. First, the government has stated that it will only seek to introduce evidence of one prior conviction each against two defendants in its case-in-chief and possibly against three additional defendants on cross-examination. Gov.'s Resp. to Def.'s Pretrial Mots. at 17. Given the limited nature of this evidence, the Court is confident that it can provide the jury with sufficient limiting instructions to restrict the jury's determination of each defendant's guilt to the appropriate evidence. Second, although the government alleges numerous instances of bank fraud in furtherance of the common scheme, the Court will take careful steps to impress upon the jury that it must consider each of these instances as separate and distinct and enter a finding of guilty only if it is able to agree unanimously that the government has met its burden of proof in each instance. The Motion to Dismiss is therefore denied.

*Motion for Severance*

■ Rule 8(b) permits joinder of defendants "if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses." FED.R.CRIM.P. 8(b). Proper joinder is determined from the face of the indictment. *Bruun,* 809 F.2d at 406 (citations omitted); *United States v. Velasquez,* 772 F.2d 1348, 1354 (7th Cir.1985), *cert. denied,* 475 U.S. 1021, 106 S.Ct. 1211, 89 L.Ed.2d 323 (1986).

■ The defendants argue that they are improperly joined because, as noted above in our discussion concerning the Motion to Dismiss, they assert that the indictment alleges multiple distinct schemes rather than one unified scheme. We have already concluded, however, that the indictment properly alleges one common scheme to defraud. The motion for severance on the basis of improper joinder pursuant to Rule 8(b) is therefore denied.

■ Although we conclude that joinder is proper under Rule 8(b), Rule 14 authorizes severance if joinder is prejudicial to the defendants:

If it appears that a defendant or the government is prejudiced by a joinder of offenses or of defendants in an indictment or information or by such joinder for trial together, the court may order an election or separate trials of counts, grant the severance of a defendant or provide whatever relief justice requires.

FED.R.CRIM.P. 14. Courts are given wide latitude in determining whether Rule 14 severance is appropriate. *United States v. Caliendo,* 910 F.2d 429, 437 (7th Cir.1990); *United States v. Moya–Gomez,* 860 F.2d 706, 754 (7th Cir.1988), *cert. denied,* 492 U.S. 908, 109 S.Ct. 3221, 106 L.Ed.2d 571 (1989). In determining whether to grant a motion to sever, courts must weigh the public interest in judicial efficiency and economy that would result from a joint trial against the possibility of undue prejudice resulting from such a trial. *United States v. Zanin,* 831 F.2d 740, 744 (7th Cir.1987); *United States v. Rivera,* 825 F.2d 152, 159 (7th Cir.), *cert. denied,* 484 U.S. 979, 108 S.Ct. 494, 98 L.Ed.2d 492 (1987).

■ The defendants first argue that severance is appropriate because the evidence that the government will seek to introduce against Brown is grossly disparate from the evidence that will be introduced against the other defendants, who each played a much smaller role in the alleged fraudulent scheme, and will thus prejudice the other defendants. The Seventh Circuit has stated that the denial of a motion for severance "may be an abuse of discretion if there is a great disparity of evidence between the moving defendant and his codefendants." *Moya–Gomez,* 860 F.2d at 765 (citation omitted). The danger posed where the evidence is greatly disparate is that some defendants will suffer "spillover prejudice" due to the accumulation or severity of evidence against other defendants. The relevant inquiry in determining whether severance is appropriate in such a case is "whether it is within the jury's capacity to follow the trial court's limiting instructions requiring separate consideration for each defendant and the evidence admitted against him." *Id.* Absent special circumstances, however, courts generally presume that the jury is capable of faithfully observing such limiting instructions. *United*

*States v. Gonzalez*, 933 F.2d 417, 426 (7th Cir.1991) (citing *United States v. Williams*, 858 F.2d 1218, 1225 (7th Cir.1988)). We see no special circumstances in this case that warrant severance on the basis of disparity of the evidence. The fact that the evidence introduced against some defendants is proportionally greater than that introduced against others "is not itself grounds for a severance." *United States v. Hendrix*, 752 F.2d 1226, 1232 (7th Cir.) (citing *United States v. Grabiec*, 563 F.2d 313, 319 (7th Cir.1977)), *cert. denied*, 471 U.S. 1021, 105 S.Ct. 2032, 85 L.Ed.2d 314 (1985). This Court notes that, while Brown is the only defendant alleged to have been directly or indirectly involved in every fraudulent transaction, all of the defendants have been charged with bank fraud. This is not a case where some co-defendants have been charged with crimes far more heinous and shocking than those committed by other co-defendants. While we decline to grant the motion for severance on the basis of grossly disparate evidence, however, we emphasize that we intend to instruct the jury in this case with special care that it must consider each defendant separately.

▪▪▪ The defendants' second argument for severance under Rule 14 is that the government will seek to introduce evidence of prior convictions under Federal Rule of Evidence 404(b) against some defendants that will prejudice other defendants. As noted in our discussion above regarding the defendants' Motion to Dismiss, this evidence is limited to two defendants in the government's case-in-chief,[5] and possibly three additional defendants on cross-examination.[6] Severance is not required, however, when the prosecution introduces evidence of a co-defendant's past criminal record unless the defendant can show that actual prejudice will result. *United States v. Schweihs*, 971 F.2d 1302, 1321 (7th Cir.1992) (upholding trial

court's denial of severance motion because no actual prejudice resulted where the court admitted evidence of some defendants' prior crimes and instructed the jury to consider such evidence only in regard to those defendants); *United States v. Briscoe*, 896 F.2d 1476, 1517 (7th Cir.) (upholding trial court's denial of severance motion because no actual prejudice resulted from the admission of evidence of some defendants' prior crimes where the trial court repeatedly admonished and later instructed the jury that such evidence was only to be considered against those defendants), *cert. denied*, 498 U.S. 863, 111 S.Ct. 173, 112 L.Ed.2d 137 (1990). The defendants have not shown that prejudice will result from the admission of some defendants' prior convictions, and this Court is hesitant to find any such evidence prejudicial at this stage of the proceedings. Upon closer examination of the actual evidence that the government will seek to introduce, this Court may of course decide to provide the jury with limiting instructions or exclude the evidence altogether. However, we do not find that the introduction of evidence of some defendants' prior convictions will necessarily prejudice other defendants in violation of Rule 14.

▪▪▪ The defendants' third argument for severance under Rule 14 is that the government's proposed introduction into evidence of some defendants' statements made to law enforcement officers will incriminate other defendants in violation of the principles set forth in *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). Under *Bruton*, the admission in a joint trial of a co-defendant's statement that directly inculpates another defendant violates the Confrontation Clause's right to cross-examination. *See id.* at 137, 88 S.Ct. at 1628. The government has stated that it intends to offer statements by five defendants that directly incriminate a total of six other defendants,[7]

---

**5.** The government intends to introduce evidence of involvement in prior check frauds against defendants Owen Marshall Brown and Mattie Roberts. Gov.'s Resp. to Def.'s Pretrial Mots. at 17.

**6.** The government states that it may seek to introduce evidence of prior convictions against defendants Carlos Green, Keith Grice and Perry L. Sykes. *Id.*

**7.** The government intends to introduce statements by the following defendants: Victor Roberts (inculpating Owen Marshall Brown and Constance Gatlin), Constance Gatlin (inculpating Victor Roberts), Keith Grice (inculpating Stacy Senior), Lisa Roberts (inculpating Perry L. Sykes), and Perry Sykes (inculpating Lisa Roberts).

and that the references in the statements to the other defendants are brief. Gov.'s Resp. to Def.'s Pretrial Mots. at 15–16. The government has further stated that these statements can be redacted to eliminate any potential *Bruton* problem; that is, that all references to co-defendants can be eliminated and replaced with neutral pronouns. The redaction of statements that directly inculpate co-defendants is an acceptable means of addressing the Confrontation Clause concerns raised in *Bruton, see United States v. Myers,* 892 F.2d 642, 647 (7th Cir.1990), and this Court will accept for the time being the government's assurance that such statements can be redacted sufficiently to render them admissible at a joint trial.

The defendants' last argument for severance is that separate trials will result in a substantial savings of time and expense. The defendants make this argument, however, in the face of a "strong public interest in having persons jointly indicted tried together." *United States v. Turk,* 870 F.2d 1304, 1306 (7th Cir.1989) (quoting *United States v. Oxford,* 735 F.2d 276, 280 (7th Cir.1984)). Joint trials generally "reduce the expenditure of judicial and prosecutorial time [and] ... the claims the criminal justice system makes on witnesses, who need not return to court for additional trials." *United States v. Buljubasic,* 808 F.2d 1260, 1263 (7th Cir.), *cert. denied,* 484 U.S. 815, 108 S.Ct. 67, 98 L.Ed.2d 31 (1987). Indeed, "to prevail in a motion for severance, a defendant ordinarily 'must show that she could not possibly have a fair trial without a severance.'" *United States v. Andrews,* 754 F.Supp. 1161, 1171 (N.D.Ill.1990) (quoting *United States v. Caliendo,* 910 F.2d 429, 437 (7th Cir.1990)).

The defendants submit a severance plan in which they propose a total of ten trials that would take approximately 32–47 days. Def.'s Reply to Gov.'s Resp. to Pretrial Mots. at 6. The government preliminarily estimated that a single joint trial would take approximately 20–25 days. Gov.'s Resp. to Def.'s Pretrial Mots. at 18. The defendants argue, however, that the amount of attorneys fees saved by separate trials justifies severance. Citing *Andrews,* the defendants note that at a joint trial, "most of the attorneys would be compelled to sit idly for the duration of a lengthy trial where the vast majority of the evidence deals solely with the criminal activities of other attorneys' clients." Mot. for Severance at 13–14 (citing *Andrews,* 754 F.Supp. at 1172). While we note with sympathy the inconvenience that a joint trial visits upon the individual defense attorneys, as now-Chief Judge Aspen eloquently reviewed in *Andrews,* we find this case distinguishable from *Andrews. Andrews* involved thirty-eight defendants, a "labyrinthine 305–page, 175–count indictment," and 250 factually distinct criminal acts committed over a twenty-three year period. *Andrews,* 754 F.Supp. at 1164. The trial in this case presently involves thirteen defendants, a thirty-four page, one-count indictment, and approximately thirty factually distinct criminal acts committed over a two and one-half year period.[8] Given these facts, we cannot find the preference for joint trials to be overcome in this case. Accordingly, the Motion for Severance is denied.

Nevertheless, because the Court is still concerned about the overall manageability of the trial of this case, the Court has drafted a Proposed Order Governing Proceedings at Trial, which is designed to ensure a fair and efficient trial and is attached hereto as Exhibit A. Counsel for all parties shall file any proposed changes, including both modifications and additions, to the Proposed Order with this Court by July 31, 1995. After consideration of the parties' comments, the Court will enter an appropriate final order that will govern the proceedings of this trial.

### CONCLUSION

The defendants' Motion to Dismiss and Motion for Severance are denied.

### EXHIBIT A

### *PROPOSED ORDER GOVERNING PROCEEDINGS AT TRIAL*

Given the number of defendants and the parties' estimates concerning the length of

---

8. The government's estimate was made at a time when a total of fifteen defendants were expected to go to trial. Two of these defendants, Louis Fletcher and Lorenzo Morgan, have since pled guilty.

time required for the trial of this case, it is appropriate that the Court establish the following procedures to be followed and applied during trial:

1. This Court will hold an evidentiary hearing on October 20, 1995 to resolve all disputed issues of evidence, including the admissibility of specific co-conspirator statements against defendants Dotson, Green, Lisa Roberts and Sykes. Counsel for all parties are requested to exchange trial exhibit lists on or before September 29, 1995. To avoid duplication of effort, the defendants' attorneys shall coordinate and attempt to file, to the extent possible, a joint exhibit list. Counsel for all parties are hereby directed to file any motions in limine regarding disputed evidentiary matters no later than October 13, 1995. No motions in limine should be filed without a statement that an unsuccessful good faith attempt was made to reach agreement with opposing counsel regarding the disputed evidentiary matter. The Court will not entertain any argument on evidentiary objections in front of the jury during the trial if the disputed evidentiary issue is a matter that reasonably should have been raised by counsel during the Court's evidentiary hearing of October 20, 1995. The Court will attempt to resolve as many disputed evidentiary matters as possible on October 20, 1995 to avoid and minimize evidentiary problems during the trial.

2. Counsel shall submit one week before trial, in writing, suggested voir dire questions to be asked of the jury panel by the Court. All voir dire examination will be conducted by the Court pursuant to Federal Rule of Criminal Procedure 24(a).

3. With respect to the selection of the jury, the defense may have one additional peremptory challenge for each defendant on trial at the time the case is called (up to a maximum of ten additional challenges), provided all defendants agree that the Government may have a proportionate increase (60% of total defense challenges); otherwise, the defense shall have ten peremptory challenges and the government six in accordance with Fed.R.Crim.P. 24(b). The Court will announce, during the selection of the jury,

the number of alternate jurors to be selected and the number of peremptory challenges to be allowed under Rule 24 for selection of the alternates.

4. The attention of all counsel is directed to this Court's standing order of June 26, 1995, which concerns matters of etiquette, decorum and procedure that will govern during trial. Pursuant to that order, the trial of this case will be held between the hours of 9:30 a.m. to 4:30 p.m. However, on Fridays the Court will hold Court from the hours of 9:00 a.m. to 1:00 p.m. (without a luncheon break) and recess for the week. This will allow the jury members, attorneys and the Court to attend to other matters during this trial. Additionally, this Court does not plan to hold Court on Friday, November 24, 1995 if the trial is not concluded by that date.

5. Defense counsel are directed to elect and designate one of their number as "lead" counsel for the purpose of announcing challenges during jury selection and otherwise acting as liaison counsel in dealing with Government attorneys or the Court during the trial.

6. Defense counsel are also directed to confer and designate to the Court at the time of trial the sequence in which they wish to be recognized during trial for purposes of witnesses. In the absence of agreement, counsel will be recognized in the order in which the defendants are named in the style of the indictment. During the progress of the trial itself, counsel may alter the usual sequence of their recognition by handing up each morning a list of those lawyers desiring to cross-examine each Government witness expected to be called that day, and the sequence in which they wish to be recognized. (See paragraph 7, *infra*).

7. From and after the moment the case is called for trial, any objection, motion or other application for relief made by any defense counsel orally or in writing shall be deemed to be adopted and joined in by every other defendant, respectively, without announcement by counsel to that effect, and the rulings of the Court shall be deemed applicable to each defendant unless otherwise stated at the time the ruling is made. Accordingly, it shall be regarded as unnecessary and im-

proper for counsel to rise to "join in" an objection or motion. Rather, counsel should rise to be heard only for the purpose of expressly opting out of an objection or motion if that is his or her position.

8. Government counsel is directed to deliver to defense counsel each evening (if not earlier) a list of witnesses the Government anticipates calling the next trial day, and all remaining Jencks Act or *Brady* material not previously produced pertaining to each witness on the list should be delivered at the same time. Defense counsel will then be expected the next day to state in advance the desired order of recognition and to be ready to cross-examine without delay. Nevertheless, counsel should understand that the Government will not be absolutely bound by the list in calling its witnesses because it sometimes happens that the prosecution desires in good faith to change an intended order of proof, or it becomes necessary to call a witness out of turn, or the like. There may also be a security problem concerning a witness or witnesses whom the Government does not wish to identify until he or she is actually called. These may be brought to the Court's attention *in camera* when the witness list excluding those names is delivered to defense counsel.

9. Any counsel desiring daily or expedited transcripts during trial should make immediate arrangements with the court reporter and should inform the Court and other counsel of such intentions.

10. The attention of counsel is also specially directed to Section IV of this Court's standing trial order, which governs the marking and listing of tangible or documentary exhibits before trial.

11. All witnesses called to testify by any party at trial will be subject to the control of counsel who caused them to be served with a subpoena or who secured their voluntary appearance. Accordingly, upon the completion of the testimony of a witness it shall not be necessary or appropriate to inquire of the Court whether that witness may be excused; counsel may excuse the witness. If other counsel wish to have any witness available

for recall later (and have not made prior arrangements for the appearance of the witness through service of a subpoena or by voluntary agreement), it will be the responsibility of that counsel to make an announcement at the time the witness steps down that he should remain in the environs of the Court for a reasonable time to permit such counsel an opportunity to secure and serve a subpoena upon the witness and assume responsibility for his or her per diem and other expenses as provided by governing rule or statute.

12. Except for a defendant-witness (because of Sixth Amendment implications), counsel calling a witness to testify should have no further discussions with that witness concerning the case or any aspect of his testimony after the witness has been tendered for cross-examination and until such time as the witness has been tendered back for redirect examination. At all other times, within the bounds of governing ethics and the law, counsel may pursue their discussions with witnesses during the trial.

13. Given the number of lawyers involved, bench conferences are impractical and the flow or continuity of the case may not permit a side bar each time an evidentiary problem is presented. Counsel *must* be required to state the legal basis for their objections without elaboration or argument (unless invited), and the Court *may* rule on the objection without additional discussion except in the most doubtful or critical areas. For purposes of "protecting the record" and assisting the Court of Appeals, counsel may explain or the Court may amplify its rulings on the record after the jury has been excused for a break, lunch or for the day.

14. Counsel for the Government shall submit its proposed jury instructions to the Court and defendants' counsel two weeks prior to trial. Thereafter, counsel for all defendants shall meet and file, to the extent possible, a set of consolidated defense instructions with the Court one week prior to trial.